CYRUS CARPENTER & others *vs.* NORTHBOROUGH NATIONAL BANK.

Suffolk. Nov. 24, 1876. — July 3, 1877. AMES, ENDICOTT & SOULE, JJ., absent.

A., through fraud, obtained from B. a promissory note signed by B., and payable to the order of C., forged the indorsement of C. and got the note discounted at a bank. On the maturity of the note B. paid it to the bank. *Held,* that B. could maintain an action against the bank for money had and received, although the bank acted in good faith in taking the note.

CONTRACT for money had and received. Trial in the Superior Court, before *Gardner*, J., who, at the request of the plaintiffs, reported the case for the consideration of this court, in substance as follows :

The plaintiffs had been engaged for many years in Boston, under the firm name of Cyrus Carpenter & Co., as manufacturers of ranges and furnaces. They had known Abraham Jackson and William Carpenter for several years, and had had business transactions with them. William Carpenter was a builder and owned some real estate and other property. Jackson had acted as his legal adviser and held a power of attorney authorizing him to collect debts due William Carpenter and to sell and convey his land. It was alleged by the defendant, but denied by the plaintiffs, that William Carpenter had also given Jackson a power of attorney to make and execute promissory notes and to use his (Carpenter's) name in any business in which he (Carpenter) was engaged; and there was conflicting evidence on this point. William Carpenter had upon some occasions left with Jackson promissory notes, signed by him in blank, which Jackson had negotiated with the plaintiffs and others. Prior to the transaction in question, the plaintiffs had exchanged notes with Jackson and William Carpenter, sometimes for the accommodation of the former and sometimes for their own accommodation. About February 15, 1875, Jackson and William Carpenter obtained from the plaintiffs, for Jackson's accommodation, three promissory notes made by them amounting in all to about $6400, one of which was for the sum of $2625. The plaintiffs received, from Jackson and William

Carpenter, notes signed and indorsed by them in exchange for these notes. The notes were not identical in form but aggregated the same amount. A few days afterwards Jackson called alone at the plaintiffs' place of business and stated to Cyrus Carpenter that he desired to get another note from the plaintiffs for $2625, and that he could place it at less rate of discount than the former note. Cyrus Carpenter thereupon gave him a note for $2625 signed by the plaintiffs, dated February 15, 1875, payable to the order of William Carpenter in four months from date, and Jackson gave him in exchange a note for the same amount, date and time, signed by himself to the order of William Carpenter and indorsed by William Carpenter. In April, 1875, Jackson left Boston, and was subsequently adjudged a bankrupt. William Carpenter also failed and was adjudged a bankrupt. There are only nominal assets in his estate ; and no dividend has been declared out of it. The plaintiffs proved against William Carpenter all of the claims held by them, including the note for $2625, given in exchange for the second note furnished to Jackson, and Cyrus Carpenter was appointed one of the assignees of his estate.

Shortly before the plaintiffs' second note for $2625 matured, the plaintiffs were notified that the same was held by the defendant, and thereupon wrote to the defendant that it would not be convenient for them to pay the note at maturity, but that they would pay twenty-five per cent. in cash and give a note for the remainder. A few days after its maturity, namely, on June 26, 1875, one Bush, the president of the defendant, called at the plaintiffs' place of business and brought the note with him. A settlement was made by the payment of $704.95 in money, and the giving of a new note by the plaintiffs for $1968.75, payable in four months from June 18, 1875. The plaintiff testified that he was familiar with the signature of William Carpenter, but that, in the conversation with the president of the defendant bank, nothing was said about the indorsement, and that he did not in fact examine it. Bush testified that Cyrus Carpenter turned the note over and looked at the indorsements. Bush was not familiar with William Carpenter's signature. Shortly after Bush had left the plaintiffs' counting-room, Cyrus Carpenter handed the note to his son, one of the

plaintiffs and bookkeeper of the firm. The note purported to be indorsed by William Carpenter and by Abraham Jackson. The son immediately expressed the opinion that the pretended signature of William Carpenter was a forgery. The note was soon afterwards shown to William Carpenter, who pronounced his signature a forgery. The plaintiffs thereupon notified the defendant that the supposed indorsement of William Carpenter was forged, that they would require the defendant to return the money paid, and they should not pay the note for $1968.75.

The plaintiffs subsequently filed a petition in bankruptcy, and effected a composition with their creditors for ten cents on the dollar, in accordance with the provisions of the bankrupt law.

There was evidence tending to prove that the indorsement of William Carpenter to the note aforesaid was forged, that he did not know of the making of the note; and it appeared that the note was placed or passed about the time of its date by Jackson through a broker to the defendant, who discounted and took and paid the amount of the same in good faith, and there was evidence tending to prove that the proceeds of the note were used by Jackson for his own purposes.

Upon this evidence the judge ruled that the action could not be maintained, and directed a verdict for the defendant. If there was any evidence upon which the action could be maintained, the verdict was to be set aside and the case stand for trial.

*R. M. Morse, Jr.*, (*C. P. Greenough* with him,) for the plaintiffs.

*A. A. Ranney*, for the defendant, cited *Farmer* v. *Arundel*, 2 W. Bl. 824 ; *Moore* v. *Eddowes*, 2 A. & E. 133 *n.*; *Norton* v. *Marden*, 15 Maine, 45.

LORD, J. It is to be assumed, in testing the accuracy of the ruling of the learned judge who presided at the trial, that every fact upon which there was evidence for the jury was found most favorably for the plaintiffs.

It is then to be taken that the signature of William Carpenter was forged ; that Jackson misappropriated the funds which he had procured upon the forged indorsement ; that William Carpenter never had knowledge that such note had been taken in his name by Jackson, and that the note was originally obtained

from the plaintiffs by fraud. It must also be taken to be settled that Jackson had no authority to indorse the name of William Carpenter, nor to assign the note for his own benefit; and that the acts done in the premises by Jackson were done in fraud of the rights of William Carpenter and of the plaintiffs. The question then is: Could the bank acquire any title, legal or equitable, to the note thus originally obtained by fraud and passed to it, not only in fraud of the rights of the maker, but by forgery as one of the means of accomplishing the fraud? Certainly it could not.

The question sometimes discussed, whether an acceptor is bound to know the genuineness of the signature of the drawer, does not arise. Nor is it necessary to consider to what extent the rule that every party to mercantile paper warrants the genuineness of every signature preceding his is to be applied. The plaintiffs were the makers of the note. It was payable only to the order of William Carpenter. Such order was never given. The plaintiffs therefore had never promised to pay the note to the bank. The bank could not have collected the note of the plaintiffs. When the plaintiffs paid the note to the bank, they paid it under the mistaken belief that the bank was the legal owner of the note, and had the right to collect it. It was, however, immediately discovered that the bank had no such right, and notice was at once given to it that the money thus paid by mistake would be reclaimed. It is common learning that ordinarily money paid by mistake to a person not authorized to receive it may be recovered back by the person paying. The cases in which it has been held that money thus paid cannot be recovered back have been exceptions to the rule, by reason of peculiar circumstances attending the particular payments.

The case most resembling this, but less favorable to the plaintiffs, is that of *Canal Bank* v. *Bank of Albany*, 1 Hill, 287. That was the case of the acceptor of a draft in favor of one Bentley; the name of Bentley was forged; subsequently the draft was indorsed by several innocent parties; and it came into the hands of the defendant bank for collection on account of another bank. Upon notice, the acceptor paid the draft to the defendant bank, which did not disclose the fact of its agency, which bank paid the amount over to its principal. Several weeks afterwards it was

discovered that the name of Bentley was forged, too late to give notice to the indorsers, and after payment to the principal. It was held that the money could be recovered back of the defendant, notwithstanding the defendant had paid it over without notice, and notwithstanding that the indorsers could not be notified of the refusal or the failure of the acceptor to pay. It was said that, inasmuch as each subsequent indorser had paid for the draft under a mistake of fact, supposing it to be a genuine instead of a forged indorsement, he could recover the amount which he paid of the person to whom he paid it. It is not neccessary for us to consider whether or not the rule thus laid down is sound, for the reasons, first, that no such question arises in the present aspect of the case, nor can it arise in this case, inasmuch as Abraham Jackson, the assumed forger of the indorsement, was the only indorser of the note against whom any claim could arise as indorser; and neither law nor equity could require that notice should be given to Jackson, to fix his liability upon a note which he had passed by his own forgery of an indorsement.

Inasmuch, therefore, as in this case there are none of the elements which have been held to bring a case within the exceptions to the general rule, an examination of the exceptions to the rule is unnecessary. This is simply the payment of a note to a party who has no legal and no equitable interest in the promise of the maker, whatever its rights may be as against Jackson, whose name is upon the same paper. The money having been paid by mistake to a person who had no right to demand it, the case is within the general rule, and the party paying may recover back the amount thus paid. This principle has been recognized in various decisions in this Commonwealth. See *Merriam* v. *Wolcott*, 3 Allen, 258; *Merchants' National Bank* v. *National Eagle Bank*, 101 Mass. 281; *Boylston National Bank* v. *Richardson*, 101 Mass. 287; *National Bank of North America* v. *Bangs*, 106 Mass. 441.                    *Verdict set aside.*