[Birmingham National Bank v. Bradley.]

# Birmingham National Bank v. Bradley.

*Action to recover Money Paid on a Forged Check.*

1. *Forged check; liability of indorser.*—The payee of a check, who endorses it and receives the money thereon, guarantees the genuineness of said check to the indorsee, and as to the payee indorser the indorsee is under no obligation to discover its forgery; and if the check is forged, the endorsee may recover from such indorser the money paid him in an action of assumpsit.

2. *Right of drawee bank on discovering forgery.*—Where a forged check has been forwarded by an indorsee bank to the drawee bank for collection and the latter bank credits the forwarding bank with the amount of such check, without actually remitting the money, on discovering the forgery, the drawee bank can charge said amount back to the forwarding bank.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. J. J. BANKS.

This was an action brought by the Birmingham National Bank against the appellee, John G. Bradley, to recover money paid by the plaintiff to the defendant upon a check, which had been raised from two dollars to four thousand dollars; and was commenced on May 20, 1892.

On account of the prolixity of the pleadings, there will only be set out in this statement those on which issue was joined, and those to which the rulings of the circuit court were adverse to the appellant. The complaint contained six counts. As amended the 1st and 2d counts were as follows:

"1st. The plaintiff claims of the defendant the sum of $4,000, with interest from the 23d of February, 1892, due by defendant to plaintiff on a check or draft, in words and figures as follows:

'Duplicate unpaid.                                        No. 156,597.

The Gate City National Bank of Atlanta, 2–23–1892.

Pay to the order of John G. Bradley Four Thousand Dollars.

To National Park Bank.

New York.                    .         A. W. Hill, V. P.'

endorsed by John G. Bradley. Plaintiff avers that on to-wit, the 24th day of February, 1892, defendant endorsed said draft or check to plaintiff and received from plaintiff the sum of $4,000 in cash therefor. Plaintiff avers that said draft or check had been altered or raised after the issue thereof, and before the endorsement thereof by defendant to plaintiff, without the knowledge or consent of the Gate City National Bank of Atlanta from $2, to $4,000, and after the issue thereof, and before endorsement thereof by defendant to plaintiff, and without the knowledge or consent of the Gate City National Bank of Atlanta, the name James Fix, originally named as payee in said draft, was changed to the name John G. Bradley, and also the the figures $4,000 were punched or cut in said draft or check. And plaintiff avers that it paid said sum of $4,000 on said draft to defendant in ignorance of said alterations or changes in said draft or check. Plaintiff avers that it immediately forwarded said check or draft to the drawee, the National Park Bank, for collection, and said National Park Bank, drawee, and said Gate City National Bank of Atlanta, the drawer of said draft or check, have refused to pay the same to plaintiff and disclaimed all liability thereon. Plaintiff further avers that it informed defendant of said alteration or raising in said draft or check as soon as it was informed of the fact." "2d. Plaintiff claims of defendant the further sum of $4,000 with interest from, to-wit, the 23rd day of February, 1892, due by defendant to plaintiff on a certain draft or check, in words and figures as follows:

'Duplicate unpaid.                              No. 156,957.
        The Gate City National Bank of Atlanta, 2–23–1892.
                        Pay to order of John G. Bradley, $4,000.00    Four Thousand————————Dollars.
To National Park Bank.
                New York.                    A. W. Hill, V. P.'

Plaintiff avers that on to-wit, the 24th day of February, 1892, defendant endorsed said check or draft to plaintiff and received the sum of $4,000 in cash from plaintiff therefor, and plaintiff avers that said draft had been altered or raised after the issue thereof, and before the endorsement thereof by defendant to plaintiff, and without the knowlege or consent of said Gate City National Bank of Atlanta, from $2 to $4,000, and after issue there-

of and before the endorsement thereof by defendant to plaintiff, and without the knowledge and consent of the Gate City National Bank of Atlanta, the name James Fix, originally named as payee in said draft, was changed to the name John G. Bradley, and also the figures $4,000 were punched or cut in said draft or check. And plaintiff paid said sum of $4,000 to defendant on said draft or check in ignorance of said alterations or changes. Plaintiff avers that it immediately forwarded said check or draft to the National Park Bank, endorsed by plaintiff for collection, and said National Park Bank credited said draft or check to plaintiff, but, finding out immediately afterwards that said check or draft had been altered or changed, said National Park Bank charged the same against plaintiff, and deducted the same from certain funds of plaintiff in the custody of said National Park Bank. Plaintiff further avers that immediately on being informed of said raising or alteration in said draft or check it notified defendant. Plaintiff further avers that said National Park Bank, the drawee, and said Gate City National Bank of Atlanta, the drawer, refused to pay said check or draft and disclaimed all liability thereon.''

The 3d, 4th, 5th and 6th counts of the complaint were the common counts, for money had and received; money paid at the request of the defendant; money loaned by the plaintiff to the defendant; and on stated account. To the 3d, 4th, 5th and 6th counts of the complaint the defendant pleaded the general issue. The court sustained the plaintiff's demurrers to the 4th, 5th, 6th, 7th, 9th, 10th, 12th, and 13th pleas of the defendant. The 11th plea of the defendant was withdrawn. The 1st and 2d pleas of the defendant to the complaint, and to each count separately and severally, were the general issue. The 3d plea was as follows : ''That the sum or sums of money therein claimed to be due plaintiff have been paid to plaintiff in full before the commencement of this suit.'' The 8th plea was as follows : ''Comes the defendant and for further answer to said complaint says, that said check had been paid to the Birmingham National Bank before the institution of this suit.'' To the 3d and 8th pleas the plaintiff demurred, on the ground that said pleas do not allege that payment was made by defendant or any one authorized to make such payment. This demurrer was overruled, whereupon the plaintiff filed its

replications to the 3d and 8th pleas as follows : "1st. That he joins issue on said pleas." "2d. That said alleged payment consisted in a credit given plaintiff by said National Park Bank for the amount of said check on receipt thereof. Plaintiff avers that said draft or check was raised or altered as set out in 1st and 2d counts of complaint, and that as soon as said National Park Bank was informed that said check or draft had been altered or raised it charged the same back to the account of said Birmingham National Bank, and returned it to the Birmingham National Bank." "3d. For further replication to said 3d and 8th pleas, plaintiff says : They aver the same facts as in the second replication, and that, with full knowledge of said facts, defendant ratified the same and promised said Birmingham National Bank to repay to it the sum of four thousand dollars paid out on said check or draft." "4th. For further replication, plaintiff further says : They aver the same facts in the second replication, and say that, with full knowledge of such facts, said defendant ratified said action of said Birmingham National Bank and said National Park Bank, and promised said National Park Bank to repay to it said sum of four thousand ($4,000.00) dollars paid out to him on said check or draft, and by reason thereof, said Birmingham National Bank retained said check or draft, returned as aforesaid by the National Park Bank to said defendant ; and by reason of the said action in ratifying of charge and retention of said draft defendant is estopped from setting up said alleged payment." The defendant demurred to these respective replications, which demurrers were overruled, and thereupon the defendant filed the following rejoinders : "1st. That the National Park Bank of New York, after paying said check and passing it to the credit of the Birmingham National Bank on its books, charged it off without the consent of the Birmingham National Bank, and that said action on the part of the National Park Bank did not rescind or cancel the payment already made." "2d. That the act of the National Park Bank in cancelling and rescinding on its books the credit given the Birmingham National Bank when said Park Bank received daily notices of the number and amounts of the drafts drawn on it by the Gate City National Bank, where they amounted to more than one thousand dollars, and, without notice on the day of pay-

ment, that the four thousand dollar check or draft described in the complaint had been issued, said National Park Bank negligently paid said check or draft and telegraphed to the Birmingham National Bank that said check had been paid. 3d. That the defendant has been greatly damaged by the negligence of the National Park Bank in notifying defendant through the Birmingham National Bank that said check had been paid, when said National Park Bank had not received the usual notice from the Gate City National Bank of the issuance of said check by it; and that thereby the National Park Bank is estopped from denying the payment of said check to the Birmingham National Bank." The plaintiff demurred to each of these rejoinders of the defendant to the replications of plaintiff to the 3d and 8th pleas, and its demurrer to the 1st and 3d rejoinders were sustained. The plaintiff demurred to the second rejoinder to the replications of plaintiff to the 3d and 8th pleas upon the following grounds : "1st. Because it is not alleged that said defendant suffered any injury or damage by reason of alleged negligence. 2d. Because it is not alleged that either said defendant or the Birmingham National Bank suffered any damage or injury by reason of the alleged negligence of said National Park Bank. 3d. Because it is not alleged that damage or injury was suffered by said defendant by said alleged negligence. 4th. Because it is not alleged what injury or damage defendant or the Birmingham National Bank suffered by reason of said alleged negligence. 5th. Because it is not alleged that the alteration could be discovered by bare inspection of said instrument. 6th. Because the facts alleged do not constitute negligence in not discovering the alteration from bare inspection of instrument. 7th. Because said plea does not allege negligence in said National Park Bank. 8th. Because said plea does not state facts showing any negligence in said National Park Bank." This demurrer was overruled, and the plaintiff duly excepted to such ruling. Issue was then joined on the pleadings, and upon the issues so formed the trial was had.

The facts of the case are sufficiently stated in the opinion.

In its general charge to the jury, the court, among other things, instructed the jury as follows : "It is a general principle of law that if a draft or bill of ex-

8

change is issued in one form, payable for a certain amount, to a certain person mentioned therein as payee, and that bill of exchange is altered in a material part, it is a destruction of the instrument except as to those persons who waive that right. Now, if the bill of exchange was altered as claimed by the plaintiff, and the National Park Bank of New York had no notice of the alteration, if they were not informed that the bill of exchange had been altered, and they placed it to the credit of the Birmingham National Bank, that could not amount to a waiver on their part of their right to claim that the bill of exchange had been destroyed by the alteration; but if they did have notice that it had been altered or changed as claimed by the plaintiff, and with that knowledge placed it to the credit of the Birmingham National Bank, then that would amount to a waiver on their part of the destruction of the instrument which would otherwise follow from its alteration or change." The plaintiff duly excepted to this portion of the court's general charge, and also excepted to the following additional portion of the court's general charge: "Now, it is claimed by the defendant in this case that there was a custom on the part of the Gate City National Bank to forward each day to the National Park Bank a list of all drafts drawn on it for a thousand dollars and upwards. Now, if you believe that there was such a custom on the part of the Gate City National Bank, and that on this particular day or on the day the draft was drawn, no notice was given by the Gate City National Bank to the National Park Bank that it had drawn the draft of $4,000.00 on the National Park Bank payable to John G. Bradley, and that the National Park Bank, when that draft was presented to it by the Birmingham National Bank, placed it to the credit of the Birmingham National Bank, without having received such notice, then it is a question of fact to determine whether that carried knowledge home to the National Park Bank that no such draft as the one presented by the Birmingham National Bank had been issued by the Gate City National Bank on the day this draft purports, on its face, to have been issued." Among the written charges asked by the plaintiff and refused by the court, and to the refusal to give which the plaintiff separately excepted, was the following:

"1. I charge you, gentlemen of the jury, that the only question in this case is whether said check or draft, number 156,597, drawn by the Gate City National Bank of Atlanta, Georgia, on the 23d day of February, 1892, upon the National Park Bank, was altered or raised from two ($2.00) dollars to four thousand ($4,000.00) dollars, and the name of the payee altered or changed from James Fix to John G. Bradley, after the issuance thereof by said Gate City National Bank, without the knowledge and consent of said Gate City National Bank, and was in all other respects genuine, and if they believe from the evidence it was so altered or raised, then they must find for the plaintiff."

It is not deemed necessary to set out the remainder of the 54 charges, which were asked by the plaintiff, and to the court's refusal to give each of which the plaintiff separately excepted. There was judgment for defendant. The plaintiff appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

MOUNTJOY & TOMLINSON, for appellant.—1. Where money is paid on a raised check by mistake neither party being in fault, the rule is that the party so paying, even the drawee, may recover as for money paid without consideration.—2 Morse on Banking, p. 813; 2 Daniel on Neg. Instru., (3d Ed.), § 1661; *Allen v. 4th Nat. Bank*, 59 N. Y. 19; *Frank v. Lanier*, 91 N. Y. 112; *Espey v. Bank of Cincinnati*, 18 Wall. 504; *Exchange Bank v. Nassau Bank*, 91 N. Y. 74; *Little v. Derby*, 7 Mich. 325; *People's Bank v. Franklin Bank*, 17 Amer. St. Rep. 884, note p. 896; *Nat. Bank v. Bangs*, 106 Mass. 441; *1st Nat. Bank v. Ricker*, 71 Ill. 439; *Ellis v. Ohio Life Ins. & Trust Co.*, 4 Ohio St. 628; 94 U. S. 345; 91 N. Y. 106.

2. In order to preclude recovery of money paid on a raised check, the paying bank must not only have been negligent in giving notice of discovery of the alteration, but the party from whom recovery is sought must have been injured as a natural and proximate result of such negligence.—2 Morse on Banking, (3d Ed.), §§ 464, 479; *Bank of Commerce v. N. B. Asso.*, 55 N. Y. 111. If the bank paying an altered check has been negligent and injury has resulted therefrom, yet if the party putting the altered check into circulation has been negli-

gent in the first instance, the paying bank can recover.—
2 Morse on Banking, p. 774, sub-div. C.; *Nat. Bank v.
Bangs*, 106 Mass. 441; *Ellis v. Ohio Life Ins. & Trust Co.*,
4 Ohio St. 628; *People's Bank v. Franklin Bank*, 17
Amer. St. Rep. 884; *First Nat. Bank v. Ricker*, 71 Ill.
439; *Wilkinson v. Johnston*, 3 B. & C. 435. Mere delay in
detecting the alteration will not prevent recovery, if
paying bank exercised reasonable diligence in giving
notice of the discovery of the alteration.—*Corn Exchange
Bank v. Nassau Bank*, 91 N. Y. 74; *Frank v. Lanier*, 91
N. Y. 116; *Allen v. Fourth Nat. Bank*, 59 N. Y. 19; *Rapp
v. Nat. Sec. Bank*, 20 Atl. Rep. 508; *First Nat. Bank v.
First Nat. Bank*, 24 N. E. Rep. 44.

3. The endorsement of a check is warranty of its
genuineness in every respect.—1 Dan. Neg. Instru., (2d.
Ed.), 531, § 669; *Dalrymple v. Hillenbrand*, 62 N. Y. 5;
*Andrew Turnbull v. Bowyer*, 40 N. Y. 456. Any trans-
ferer of a negotiable paper, by delivery or by endorse-
ment and delivery, like every other vendor of personal
property, warrants his title to be what it purports to
be.—2 Morse on Banking, §§ 477, 464, sub-div. C.; *Little v.
Derby*, 7 Mich. 325; *Nat. Bank v. Bangs*, 106 Mass. 445;
*MacGregor v. Rhodes*, 6 El. & B. 266; *State Bank v. Fear-
ing*, 16 Pick. 533; *White v. Continental Nat. Bank*, 64
N. Y. 320.

4. Money paid on an altered check may be recovered
in an action for money had and received.—*Little v. Derby*,
7 Mich. 325; 4 Wait's Ac. & Def., p. 496. Bradley
is bound by his promise to repay the money received on
the altered check.—*Montgomery v. Crossthwait*, 90 Ala.
553.

GARRETT & UNDERWOOD, DAN. S. GREEN, L. C. BRAD-
LEY and B. M. ALLEN, *contra*.—The giving of credit by a
bank to its depositors on draft or check, is as much a
payment as if the actual money was paid over the bank's
counter.—*Bank of St. Albans v. Farmers Bank*, 10 Vt. 141;
*Levy v. Bank*, 1 Binn. 27. If a bank pays a forged draft
to the holder without fault, and in ignorance of the
fraud pays value for it, the money cannot be recovered
back.—*Commercial Bank v. First Nat. Bank*, 30 Md. 11;
*First Nat. Bank v. Ricker*, 71 Ill. 439; *Bank of St. Albans
v. Farmers Bank*, 10 Vt. 141; *Bernheimer v. Marshall*, 2
Minn. 78; *Weisser v. Denison*, 10 N. Y. 75; *Young v.*

[Birmingham National Bank v. Bradley.]

*Lehman*, 63 Ala. 523 ; *Allen v. Fourth Nat. Bank*, 59 N. Y. 19 ; *Espy v. First Nat. Bank*, 18 Wall. 604 : *Clews v. N. Y. Bank Asso.*, 105 N. Y. 398 ; *Louisiana Nat. Bank v. Citizen Nat. Bank*, 28 La. Ann. 189.

The National Park Bank, by sending the telegram to the Birmingham National Bank, stating the check was paid, estopped itself from afterwards asserting that it was not paid, and it had no right to charge the amount back after the credit was allowed the Birmingham National Bank, without its consent, which the proof shows was not given.—*Continental Nat. Bank v. Nat. Bank of Commerce*, 50 N. Y. 575 ; *Brooks v. Martin*, 43 Ala. 360 ; *National Bank v. Westcott*, 118 N. Y. 468 ; *Nat. Park Bank v. Seaboard Bank*, 114 N. Y. 28.

COLEMAN, J.—This was an action brought by the plaintiff bank to recover money paid to the defendant Bradley, upon a check. We think the pleadings unnecessarily prolix, and tended to hide the real issue involved in the case. The facts upon which the plaintiff relied, for a recovery may be summarized as follows : On the 23d of February, 1892, The Gate City National Bank, of Atlanta, Ga., drew a check payable to the order of James Fix for the sum of two dollars on the National Park Bank of New York. After this check was issued, without the knowledge or consent of the drawer, the name of the payee was changed to John G. Bradley, the defendant, and the amount changed from two dollars to four thousand dollars. One Gelham carried the check to Birmingham, where Bradley resided— who was well known to the plaintiff bank, and who was considered reliable and responsible by the bank. Bradley endorsed the check to the plaintiff bank and received from it the full amount of four thousand dollars in cash. The plaintiff bank forwarded the check immediately to the drawee bank in New York endorsed "for collection." The check reached New York on the 27th of February, and on the same day the drawee telegraphed to the plaintiff that the check was paid, which information was immediately communicated to Bradley. On the 29th of February, Bradley having his suspicions aroused, had the plaintiff to telegraph to the drawee bank to examine closely the check. In consequence of this telegram, the National Park Bank on the same day tele-

graphed to the Gate City Bank, the drawer, from which it learned that the check had been altered as above stated. Thereupon, on the next day, March 1st, the National Park Bank, the drawee and to which the check had been forwarded for collection, telegraphed to the plaintiff bank as follows : "The four thousand dollar Gate City National Bank check has been altered from two dollars. We charge it back, and return to you to·day." The contents of this telegram were at once made known to Bradley. There was no question as to the genuineness of the signature of the drawer. This is plaintiff's case.

The case for the defense is substantially as follows : First, that there had been no alteration of the check, but that it was drawn originally in his favor for four thousand dollars. Second, that if the check was raised from two dollars to four thousand dollars, and his name substituted for the original payee, that he was deceived and imposed upon·by Gelham and induced to receive the check believing it to be genuine, and without fault on his part, received the money for it from the plaintiff, that he applied about five hundred dollars to the payment of a debt due himself from Gelham, that he retained about eight hundred dollars, at Gelham's request, for another creditor of Gelham, and the balance was paid over to Gelham, that the drawee, the National Park Bank, had been negligent in not detecting the forgery within a reasonable time and informing the defendant of the forgery, that in consequence of this neglect of the National Park Bank the defendant had been injured, in this, that Gelham was in the city of Birmingham on the 27th of February, on which day, if the defendant had been duly notified of the forgery, he would have arrested Gelham and recovered back the money. And, third, that the check was paid by the National Park Bank to the plaintiff bank, and, therefore, the plaintiff bank has no cause of action against the defendant.

The principles of law which govern this case are well settled.

Bradley was the payee of the check. When he endorsed it to the plaintiff bank and received the money on it, he warranted to the endorsee bank the genuineness of the check, both as to the drawer's signature as well as the amount expressed in the check. As to him there is

no obligation upon the plaintiff bank to know or to discover that the drawer's signature was forged or the amount raised. The drawee bank is held to a knowledge of the signature of the drawer, but the payee indorser is held to a knowledge of all other facts.

The discounting bank and the drawee bank in such a case have the right to rely upon the endorsement of the payee, and as to him are not required to exercise any diligence to discover the fact that the check had been raised. These facts are conclusively presumed to be within the knowledge of the payee. Under such circumstances the money paid can be recovered back in assumpsit, unless possibly from some subsequent arrangement, or cause, the right is lost. Certainly the fact, that the payee, who received the money as payee and ostensible owner, has disposed of it according to his own will can not in any way affect this right. The authorities cited by appellee to the proposition, that if a bank pays a forged check to a holder without fault, who in ignorance of the fraud pays value for it, the money cannot be recovered back, are not applicable to the case at bar. Bradley was the payee, and by his indorsement obtained the money. He parted with nothing to get possession of the check. Its genuineness is conclusive as to him, and as endorser he guaranteed it to be genuine for the amount expressed in the check.—*Carpenter v. Nat. Bank*, 123 Mass. 66; *Nat. Park Bank v. Seaboard Bank*, 114 New York 28; 11 Amer. St. Rep. 612; *White v. Bank*, 64 New York 316; *Susquehanna Bank v. Loomis*, 85 New York 207.

The check was forwarded by the plaintiff to the National Park Bank for collection. The amount of the check was credited to the plaintiff on the day received, and the plaintiff notified that it was paid. As soon as the forgery was discovered, which was within three days after its reception, the National Park Bank charged the amount back to the plaintiff and returned the check. If the money in fact had been remitted to plaintiff, we do not doubt, under the facts disclosed in the record, the National Park Bank could have recovered the money in assumpsit. The check was forwarded "for collection." Funds of the drawer on deposit with the drawee were applied to its payment, by crediting the amount to the forwarding bank, and if the check had been altered, the

credit was without legal authority from the drawer, and under a mistake of facts for which, as between the drawee bank, if the money had been remitted, or the forwarding bank, which had paid the money, and the payee—endorser—the latter would be responsible, in an action for money had and received.—*Young & Son v. Lehman, Durr & Co.*, 63 Ala. 519; 114 New York, *supra*; *U. S. Bank v. Nat. Park Bank*, 29 N. E. Rep. 1028. The payee of a forged check, who endorses it, and receives the money, acquires no title as against the party or the owner of the money. It would seem unnecessary to cite additional authorities to this proposition—114 New York, *supra*; *U. S. Bank v. Nat. Park Bank*, 29 N. E. Rep. 1028.

The respective rights of the drawer and drawee, and their corresponding duties and liabilities to each other, and private rules existing between them for their mutual protection do not arise in this case. Not having remitted the money, but simply having credited the amount to the plaintiff, the drawee bank had the right to charge it back. The undisputed proof establishes the fact that the demand has not been paid to the plaintiff by the defendant Bradley.

The case cited by appellee, *Clews v. Bank of New York*, 114 N. Y. p. 70, is not applicable. In the authority cited, Clews, before purchasing the certified check, enquired of the certifying bank, if the certificate of the check was good, and, being assured that "the bill was correct in every particular," parted with valuable consideration for it. The check had been raised. The suit was maintained, not upon the ground that the certifying bank had been negligent, but upon the contract of certification. If Bradley had been so assured by the drawee bank, that the check was correct in every particular, and upon this assurance had parted with value to obtain the check, the case would be more in point. The relative obligation of the parties in the case at bar are the reverse. The drawee bank was assured by Bradley's endorsement, and by the plaintiff bank, that the amount expressed in the check was the real amount for which it was given.

We have held that the plaintiff owed the defendant no duty to discover the fraud and forgery, and the evidence is without contradiction that both the plaintiff

and the National Park Bank acted with all due diligence, after the discovery of the alleged fraud and forgery. Under the facts of the record before us there is but one open question, and that is, whether the check was in fact altered, after it was issued by the Gate City Bank, and before it was endorsed by the defendant Bradley. The statement of the principles of law applying to the case, will enable the parties to shape the issues properly on another trial.

Reversed and remanded.