### J. S. WOODWARD v. THE SAVINGS AND TRUST COMPANY.

(Filed 1 October, 1919.)

**1. Banks and Banking — Depositors—Signatures—Forgeries—Presumptions —Credits—Fraud—Checks—Payment.**

A drawee bank is presumed to know the genuineness of the signatures of its depositors, and when it accepts a forged check from another of its depositors and places it to his credit, it is considered as a payment of the check which, without anything further appearing, cannot be withdrawn; but where such other depositor is aware of the fact of forgery, endorses the check, and it is accordingly credited to him without knowledge of such facts on the part of the bank, the bank may return the check to such depositor and rightfully charge his account therewith, without reference to any fraudulent intent on his part.

**2. Banks and Banking—Negotiable Instruments—Holders—Due Course—Indorsers—Guarantees—Statutes.**

The liabilities of an endorser of a negotiable instrument are, under the law, only in favor of a holder in due course, and do not attach when the payer of a check endorses it to the drawee bank, which simply pays out of the drawer's funds in its hands.

APPEAL by plaintiff from *Devin, J.,* at May Term, 1919, of BEAUFORT.

This is an action to recover damages against the defendant bank for charging back against the account of the plaintiff a check of $380.

The jury returned the following verdict:

1. Did the defendant represent to the plaintiff that the check for $380, signed in the name of Winnie E. Jackson, was good and would be paid? Answer: "No."

2. Was the plaintiff induced by said representation to sell and deliver the car to Simon Jackson? Answer: "No."

3. Did the defendant accept the check for $380 and credit plaintiff's account therewith? Answer: "Yes."

4. Was the name of Winnie E. Jackson signed to said check without the authority, knowledge or consent of said Winnie E. Jackson? Answer: "Yes."

5. What damage, if any, is plaintiff entitled to recover therefor? Answer: "None."

The verdict, considered in connection with the evidence and the charge, discloses the following facts: In January, 1919, the plaintiff was engaged in the business of selling automobiles in Washington under the name of the Overland Washington Company. On the morning of 24 January, one Simon Jackson went to the place of business of the plaintiff about 8 o'clock in the morning and entered into a contract for the purchase of a Ford car from one Hollowell, agent of the plaintiff, by the terms of which Jackson was to pay $20 in cash, give a paper

for $100 with solvent endorsers, a check for $280, and a note for $25 secured by mortgage on the automobile. Simon Jackson had no account with the defendant bank but he gave a check for the $280, signing the name of his mother, Winnie Jackson, as drawer, who did have an account in the bank. Hollowell took the check to the defendant bank and asked if the check of Winnie Jackson for $280 was good, which was answered in the affirmative, Winnie Jackson having at that time $340 to her credit in the bank. Hollowell returned to the place of business of the plaintiff when the plaintiff was present, and it was then found that Simon Jackson could not secure the papers for $100 properly endorsed, and the check for $280 was then torn up, and he gave to the plaintiff as payee another check upon the defendant bank for $380, signing the name of Winnie Jackson as drawer in the presence of the plaintiff, who took this check to the bank, endorsed it, passed it across the counter, and was given credit for the same on his account as a depositor. Later in the day the defendant bank charged back the check to the account of the plaintiff, finding that Winnie Jackson did not have $380 to her credit and that she had not authorized Simon Jackson to sign her name to the check, which the jury finds to be a fact.

The automobile was delivered to Simon Jackson on Friday and was used by him, and being injured, was returned to the plaintiff on Saturday for repairs.

The plaintiff then, claiming the right to hold the automobile under his mortgage to secure the $25, after advertisement, sold it and had it bought in for himself.

The plaintiff now has the automobile, $20 in cash paid by Simon Jackson, and his note for $25.

The plaintiff moved for judgment on the third issue, which was refused, and he excepted.

Judgment was rendered for the defendant, and the plaintiff appealed.

*E. A. Daniel, Jr., attorney for plaintiff.*
*Stewart & Bryan and Ward & Grimes attorneys for defendant.*

ALLEN, J. The weight of authority is in favor of the proposition for which the plaintiff contends, that a bank, the drawee of a check, accepting it unconditionally and passing it to the credit of the depositor, in the absence of special custom known to the depositor, cannot charge it back against the account of the depositor on the ground that it is an overdraft.

The Court says in *Bank v. Burkhart,* 100 U. S., 689: "In Morse's well-considered work on Banking, p. 321, it is said: 'But if at the time the holder hands in the check he demands to have it placed to his credit,

and is informed that it shall be done, or if he holds any other species of conversation which practically amounts to demanding and receiving a promise of a transfer of credit, as equivalent to an actual payment, the effect will be the same as if he had received his money in cash, and the bank's indebtedness to him for the amount will be equally fixed and irre-vocable.'

"We regard this as a sound and accurate exposition of the law upon the subject; and it rests upon a solid basis of reason. The authority referred to sustains the text.

"When a check on itself is offered to a bank as a deposit, the bank has the option to accept or reject or to receive it, upon such conditions as may be agreed upon. If it be rejected, there is no room for any doubt or question between the parties. If, on the other hand, the check is offered as a deposit and received as a deposit, there being no fraud and the check genuine; the parties are no less bound and concluded than in the former case. Neither can disavow or repudiate what has been done. This case is simply one of an executed contract. There are the requisite parties, the requisite consideration, and the requisite concurrence and assent of the minds of those concerned. It was well said by an eminent Chief Justice: 'If there has ever been a doubt on this point there should be none hereafter.' *Oddie v. The National City Bank of New York,* 45 N. Y., 735.

"When a bank credits a depositor with the amount of a check drawn upon it by another customer, and there is no want of good faith on the part of the depositor, the act of crediting is equivalent to a payment in money, and the bank cannot recall or repudiate the payment because, upon an examination of the accounts of the drawer, it is ascertained that he was without funds to meet the check, though when the payment was made the officers labored under the mistake that there were funds sufficient. In such a case the bank could have received the check conditionally, and have come under obligations to account to the holder for it only in the event that on an examination of the accounts of the drawer it was found he had funds to meet it, or in the event that he provided funds for its payment. Or it could have asked for time to examine the accounts, that it might determine whether it would accept and pay or dishonor the check. It would have been within the option of the holder to have accepted or rejected either of these propositions. But when the holder presented the check with his pass book, that the check might be entered as a deposit to his credit, it was a request for the payment of the check; and there can be no distinction between a request for payment in money and a request for payment by a transfer to the credit of the holder." 3 R. C. L., 526.

To the same effect see 7 C. J., 681; *Levy v. Bank,* 4 Dall., 142; *Bank v. Barnes,* 44 A. R., 142; *Bank v. Gregg,* 32 A. R., 173; *Wasson v. Lamb,* 16 A. S. R., 345.

And the authorities also sustain the position that the same rule applies when the check is a forgery.

"A bank is bound to know the signatures of its customers; and if it pays a forged check it must be considered as making the payment out of its own funds, and cannot ordinarily charge the amount so paid to the account of the depositor whose name was forged." 7 C. J., 683.

"In pursuance of the rule that a bank as between itself and the *bona fide* holder of a check is bound to know the signature of its depositors, and cannot recover from such a holder money paid to him upon the subsequent discovery that the drawer's name was forged, if a depositor presents a check, which he holds in good faith, drawn on the bank by another depositor, and the check is credited to him in his account and charged to the drawer, this is in effect a payment of the check, and the bank cannot strike off the credit." 3 R. C. L., 527.

This principle was first declared by *Lord Mansfield* in 1762 in *Price v. Neal,* 3 Burrows, 1355, and has been adopted in *U. S. v. Bank,* 10 Wheat., 333; *Neal v. Coburn,* 92 Me., 145; *Bank v. Bank,* 107 Iowa, 337; *Bank v. Bank,* 90 Ky., 15; *Bank v. Bank,* 30 Md., 21; *Bernheimer v. Marshal,* 2 Minn., 82; *Bank v. Bank,* 46 N. Y., 77; *Bank v. Bank,* 60 Minn., 198; *Bank v. Bank,* 10 Vt., 145; *Yarborough v. Trust Co.,* 142 N. C., 381, and indeed in all the States except Pennsylvania, where it has been changed by statute. *Bank v. Bank,* 66 Pa. St., 438.

These principles rest upon the presumption that the drawer knows the signature of its customer, and upon the necessity of fixing some time when there shall be no further inquiry by the one upon whom it is drawn into the integrity of commercial paper with which so much of the business of the world is done today, but the courts recognize that they are establishing a rule at variance with the principle that money paid under a mistake of fact may be recovered, and the one depositing the check, if both the payee and endorser of the check, is held to knowledge of all other facts except the signature of the drawer, and he can take no benefit from the transaction if he actively participated in the forgery, although without fraudulent intent.

This is true because the payee in the check is necessarily brought in close touch with the drawer, and has every opportunity to inquire into the regularity and genuineness of the paper.

"It would be an exceedingly harsh rule to permit one who negotiates with the forger, and obtains his check payable to the use of the party advancing the money, who then endorses it to a bank, to hold on to the money when the payee has himself contracted with the forger, and given

credit to the paper by his endorsement that led the bank to believe the paper was genuine." *Bank v. Bank,* 90 Ky., 10.

"The drawee bank is held to a knowledge of the signature of the drawer, but the payee-endorser is held to a knowledge of all other facts.

"The discounting bank and the drawee bank in such a case have the right to rely upon the endorsement of the payee, and as to him, are not required to exercise any diligence to discover the fact that the check had been raised. These facts are conclusively presumed to be within the knowledge of the payee. Under such circumstances the money paid can be recovered back in *assumpsit,* unless possibly, from some subsequent arrangement or cause, the right is lost. Certainly, the fact that the payee, who received the money as payee and ostensible owner, has disposed of it according to his own will, cannot in any way affect this right. The authorities cited by appellee to the proposition, that if a bank pays a forged check to holder without fault, who in ignorance of the fraud pays value for it, the money cannot be recovered back, are not applicable to the case at bar. Bradley was the payee, and by his endorsement obtained the money. He parted with nothing to get possession of the check. Its genuineness is conclusive as to him, and as endorser he guaranteed it to be genuine for the amount expressed in the check. *Carpenter v. Nat. Bank,* 123 Mass., 66; *Nat. Park Bank v. Seaboard Bank,* 114 New York, 28; 11 Amer. St. Rep., 612; *White v. Bank,* 64 New York, 316 *Susquehanna Bank v. Loomis,* 85 New York, 207." *Bank v. Bradley,* 103 Alabama, at p. 119.

"In the usual course of business, if a check purporting to be signed by one of its depositors is paid by a bank to one who, finding it in circulation or receiving it from the payee by endorsement, took it in good faith for value, the money cannot be recovered back on the discovery that the check is a forgery. It is presumed that the bank knows the signature of its own customers, and therefore is not entitled to the benefit of the rule which in cases of forgery permits a party to recover back money paid under a mistake of fact as to the character of the instrument by which the fraud has been effected. This presumption is conclusive only when the party receiving the money has in no way contributed to the success of the fraud or the mistake of fact under which the payment has been made. . . . To entitle the holder to retain money obtained by a forgery, he should be able to maintain that the whole responsibility of determining the validity of the signature was placed upon the drawee, and that the vigilance of the drawee was not lessened and that he was not lulled into a false security by any disregard of duty on his own part, or by the failure of any precautions which from his implied assertion in presenting the check as a sufficient voucher the drawee had a right to believe he had taken. *Ellis v. Ohio Ins. and*

*Trust Co.,* 4 Ohio St., 628; *Rouvant v. San Antonio Nat. Bank,* 63 Texas, 610; *First Nat. Bank of Quincy v. Ricker,* 71 Ill., 439." *Bank v. Bank,* 151 Mass., 280.

In this case the plaintiff was present and saw Simon Jackson sign the name of Winnie Jackson to the check, and he made no inquiry except of Simon of his authority to do so. He carried the check to the bank during business hours, and according to the evidence of the defendant, which the jury has accepted, endorsed it and had it passed to his credit without giving any information to the bank of the circumstances attending the drawing of the check.

The plaintiff offered evidence to the contrary, but his theory of the case has been repudiated.

Under these conditions the plaintiff cannot be permitted to recover.

We have made no reference to the liability of an endorser under the Negotiable Instrument Law because his guaranties under that law are only in favor of a holder in due course, and the drawee bank does not occupy that position. *Bank v. Bank,* 115 Tenn., 17.

It pays nothing and simply honors an order on funds in its hands.

It also appears, and the jury has so found, that the plaintiff has suffered no damage, and that if he recovered $380 of the defendant it would be a recovery for which he has paid nothing.

He sold a Ford car to Simon Jackson on Friday for $425 of which $20 was paid in cash and the balance by the check of Winnie Jackson on the defendant for $380 and the note of Simon Jackson for $25 secured by mortgage on the car.

Simon Jackson kept the car one day and returned it to the plaintiff for repairs, there being evidence that the car was damaged, but the extent not shown.

The plaintiff then advertised the car for sale under the chattel mortgage of Simon Jackson, and at the sale had it bought for himself, and he now has the car and $20 to indemnify him for the repairs, the amount of which he did not state, and the use of the car one day.

No error.