[Civ. No. 18878. Second Dist., Div. One. Nov. 12, 1952.]

NICK SHAMMAS, Appellant, v. R. A. BOYETT, Respondent.

Frank J. McCarthy for Appellant.

Daniel W. Gage for Respondent.

PATROSSO, J. pro tem.—This is an appeal by plaintiff from a judgment entered in favor of the defendant R. A. Boyett, doing business as R. A. Boyett Automobile Finance, in an action wherein plaintiff sought to recover from the respondent and others the sum of $3,900. The defendants other than the respondent suffered their defaults to be entered and judgment thereon was entered against them, which has since become final.

The facts of the case as disclosed by the evidence with but little, if any, conflict are as follows: Appellant, who is engaged in the business of buying and selling used automobiles in the city of Los Angeles, on February 24, 1949, purchased a 1949 Cadillac automobile from the defendants Van Wyke and Harrison, copartners, doing business as Auto Clearing House, and paid therefor the sum of $3,250 but with the understanding that upon the sale of the vehicle he would pay a further sum equal to the difference between $3,250

and $3,800 as well as one half of any excess, less expenses, above the latter amount. The parties undertook to evidence their agreement in this respect by the unusual means of having Auto Clearing House execute a "lien note" in favor of appellant in the sum of $3,250, due March 24, 1949, and which recited that it was given "as security" for the payment of the automobile here involved. The record is obscure as to whether or not this lien note was executed in duplicate but it is undisputed that either the note itself or a copy thereof bearing an endorsement upon the reverse side placed thereon by an employee of the appellant reading, "2-24-49 Flooring on 49 Cad Bal due on Sale of Car" was delivered by the appellant to Auto Clearing House. The other copy, if ever existent, was not produced by or accounted for by appellant.

The automobile in question bore a Michigan registration and was formerly owned by one Dostinick from whom it had been purchased by Auto Clearing House. Upon the payment of the sum of $3,250 by appellant to the latter, possession of the car was delivered to the appellant together with the registration certificate, certificate of title, verification of vehicle, a bill of sale executed by Dostinick in which the name of the vendee was left blank, and a bill of sale from Auto Clearing House to appellant. Thereafter on or about March 17, 1949, appellant negotiated a sale of the vehicle to defendant Perry, a used car dealer in San Diego, for the sum of $3,900. During the pendency of this transaction appellant was advised that Perry's purchase of the automobile was dependent upon the latter's ability to finance the same through the respondent who was engaged in the automobile financing business in the city of San Diego. Upon telephoning to respondent appellant was advised respondent would do so provided Perry would reduce the amount of financing to 90 per cent of the wholesale Bluebook value of the automobile. Being told by Perry that he could meet this condition, appellant procured from Perry the execution of a purchase order for the car together with a sight draft drawn upon the respondent in favor of appellant in the sum of $3,900 payable through Security Trust and Savings Bank of San Diego upon presentation of title and registration of the automobile, possession of which was thereupon delivered to Perry. The draft bearing the endorsement of appellant and to which were attached the title documents which appellant had obtained from Auto Clearing House with the exception

of the bill of sale from the latter to appellant together with a bill of sale from appellant to Perry was deposited by appellant with the Security-First National Bank of Los Angeles, which in turn placed its endorsement thereon and forwarded the same to the Security Trust and Savings Bank of San Diego for payment.

Following the arrival of the documents in San Diego respondent called at the bank for the purpose of taking up the draft but upon examining the title papers accompanying it refused to accept the same, and instructed the San Diego bank to return the same to appellant's bank in Los Angeles in order that the necessary corrections in the documents might be made. The draft together with the accompanying papers were returned to Los Angeles on March 29th and the indicated corrections having been made therein, appellant telephoned to the respondent and asked if the draft would be paid if presented. In reply respondent stated that payment would be made if the papers were in order. Following this conversation appellant delivered the draft endorsed in blank together with the corrected title papers to one Hamilton, an employee of Auto Clearing House, with directions to present the same for payment to the respondent and bring the proceeds of the collection to appellant. Prior to the delivery of the documents to Hamilton, and apparently in contemplation thereof, appellant had a conversation with the defendant Van Wyke in which he requested that he be given "some evidence of good faith" in permitting the draft and documents to be taken from his possession. Van Wyke thereupon stated to appellant that he would deliver a check to him upon receipt of the papers and that when the draft was paid, appellant could pay Auto Clearing House the difference due them and "they would pick up their check." Accordingly when the papers were delivered to Mr. Hamilton as previously stated the latter left with appellant what he took to be a bank check but which was in fact a draft drawn by Auto Clearing House upon itself in favor of the appellant in the sum of $3,315.68, and bearing on the face thereof the notation: "Repay loan 48 Cad. 61 Sdnt." While there was apparently no discussion as to who was to take the papers to San Diego, both appellant and Hamilton seemingly assumed that the latter would do so. Hamilton, however, delivered them to his employer, defendant Van Wyke, who in turn delivered them to his copartner, Harrison,

by whom they were taken to San Diego on the following day and presented to the respondent.

Upon examining the papers and finding them satisfactory respondent proceeded to draw a check for the amount of the draft in favor of the appellant and tendered the same to the defendant Harrison who refused to accept the same and requested a check made payable to himself. What transpired upon this occasion may best be made to appear by the testimony of the respondent— "When he (defendant Harrison) saw the check for Nick Shammas Auto Company he said to me, 'I can't use the check, it is necessary I cash this check to my order, I cash this check back to protect the check that we have given to Nick Shammas Auto Company for this automobile. I have to make my check good at the bank,' and he presented it in front of me, this lien note, as evidence that the automobile was their automobile and not Shammas's and further that the draft had been endorsed by Shammas and I was buying a negotiable paper, negotiable instrument, and I issued a check to A. E. Harrison for $3,900." And again respondent testified with reference to his transaction with Harrison as follows: "Well, about the substance of what he (Harrison) said exactly, not in the exact words, the effect of it was that the Auto Clearing House had bought the automobile in Fresno and that they didn't have enough money to cover their check and that they had to borrow money from Nick Shammas to cover their check and that they had sold the automobile, had sent Perry out to buy the automobile and that when the papers were so badly messed up they had to buy the papers back and they wanted to get the money in order that they could cover their check that they had given to Shammas."

Following this respondent tore off his signature to the check which he had previously made payable to appellant and issued a new check payable to Harrison, who appropriated the money received thereon to his own use. It may also be added that upon presentation by appellant of the draft drawn by Auto Clearing House in his favor and which was delivered to him by Hamilton when he received the draft drawn upon respondent as previously related, the same was dishonored.

After finding the facts substantially as set forth above, the trial court concluded that the appellant was negligent in entrusting the draft and title documents to Hamilton; that respondent was not negligent in making payment of

the draft to Harrison and as a consequence that appellant was not entitled to recover. The correctness of this determination is the principal question presented upon this appeal.

Counsel in their briefs undertake to debate at some length the question as to whether or not respondent was a holder in due course of the draft in question. ■ We however fail to see the relevancy of this discussion for it would seem fairly obvious that a drawee of a draft or bill of exchange who accepts and pays the same upon presentation does not thereby become a holder in due course of the instrument as that term is employed in the law of negotiable instruments. And the authorities uniformly so declare. In *South Boston Trust Co.* v. *Levin,* 249 Mass. 45 [143 N.E. 816, 817], it is said: "(I)t cannot be successfully contended that a drawee, who has paid the instrument at or after maturity, is a holder in due course. On the contrary the instrument is thereby discharged." To the same effect are the following: *Woodward* v. *Savings & Trust Co.,* 178 N.C. 184 [100 S.E. 304, 5 A.L.R. 1561, 1565]; *American Hominy Co.* v. *Millikin Nat. Bank,* (D.C., S.D. Ill.) 273 F. 550, 555; *State Planters Bank & T. Co.* v. *Fifth-Third Union T. Co.,* 56 Ohio App. 309 [10 N.E.2d 935, 941]; *Gerlach* v. *North Texas & S. F. Ry. Co.,* (Tex.Civ.App.) 244 S.W. 662, 666; *Farmers' & Merchants' Bank* v. *Bank of Rutherford,* 115 Tenn. 64 [88 S.W. 939, 940, 112 Am.St.Rep. 817]; Brannan's Negotiable Instruments Law (6th ed.), page 558, section 52.

The question here, therefore, is not whether respondent was a holder in due course, but whether payment of the draft by him to defendant Harrison operated to discharge the instrument and bar a recovery by appellant.

■ If a negotiable instrument is payable to bearer either on its face or by endorsement in blank by a person to whose order it has been made payable, one in possession thereof is presumptively the holder thereof. (*Bank of California* v. *Mott Iron Works,* 113 Cal. 409 [45 P. 674]; *Hall* v. *Thurston,* 176 Cal. 738, 740 [171 P. 285].) ■ Hence mere possession of the instrument is prima facie evidence of the person's right to demand and receive payment, and payment to him. will discharge the instrument when made in good faith and in ignorance of facts which impair his title. (8 Am.Jur., p. 490, § 848; 10 C.J.S., p. 1001, § 460.)

In the instant case we find no basis for the suggestion that in paying the draft to Harrison respondent acted in bad faith or with actual knowledge that Harrison did not

have title thereto. The argument of counsel for appellant to the contrary is that respondent then had knowledge of facts sufficient to put him upon inquiry, which if pursued would have disclosed lack of ownership of the instrument by Harrison. In support of this assertion counsel directs attention to the fact that up to the time of the payment of the draft respondent had had no dealings with any person other than appellant and Perry in connection with the transaction involving the sale of the automobile to the latter; the assurance given to appellant by respondent at the inception of the transaction that he (respondent) would accept and pay the draft if Perry met certain conditions and the papers were otherwise in proper order; respondent's knowledge that possession of the automobile had been delivered to Perry; that neither the name of Harrison nor Auto Clearing House appeared in the title papers accompanying the draft; and the conversation between respondent and appellant upon the day prior to the payment of the draft when in answer to appellant's inquiry respondent stated that he would pay the draft if sent to him and the papers were found to be in proper order.

All of these facts, however, if conceded to be susceptible to the inference which appellant seeks to deduce therefrom, are not necessarily inconsistent with the apparent ownership of the draft in Harrison on the date of its payment, as evidenced not only by his possession thereof endorsed in blank but also the possession of the lien note executed by his firm in favor of the appellant and which recited that it was given as security for the payment of the automobile in question. ■ At that time the lien note was past due, and while, as pointed out by counsel for appellant, it bore no endorsement of payment thereon, the fact alone that it was in possession of the maker was presumptive evidence of its having been paid. (Code Civ. Proc., § 1963(9); *Turner* v. *Turner*, 79 Cal. 565, 566 [21 P. 959].)

■ The most that may be said in appellant's behalf is that, viewed in the light most favorable to him, the evidence might reasonably have warranted the trial judge in drawing the inference which appellant seeks to deduce therefrom. Such concession however would not compel a reversal of the trial court's determination to the contrary, this by reason of the well established rule that, although the facts are undisputed ''if it appears that either one of two inferences may fairly and reasonably be deduced from those facts, there

still remains in the case a question of fact to be determined by the jury (or by the trial judge where the case is tried without a jury) and'. . . the verdict of the jury or the finding of the trial judge thereon cannot be set aside'' upon appeal on the ground that it is not sustained by the evidence when regarded in the light most favorable to the support of the judgment. (*Mah See* v. *North American Acc. Ins. Co.,* 190 Cal. 421, 426 [213 P. 42, 26 A.L.R. 123].) And as we believe that the evidence here fairly and reasonably warrants the trial court's finding in favor of the respondent upon this issue we are concluded thereby.

█ In closing the discussion upon this phase of the case it should perhaps be added that, while we do not concur in the trial court's conclusion that respondent was wholly free from negligence, rather believing that both parties to some extent at least failed to exercise due care in the premises, nonetheless each was the innocent victim of the fraudulent conduct of Harrison, and accordingly we find ourselves in agreement with the view expressed by the trial court that appellant, having clothed Harrison with the apparent ownership of the draft, thus enabling him to perpetrate the fraud, must bear the consequences thereof. The equitable principle applicable here is well expressed in *Kaku* v. *Giffen,* 13 Cal. App.2d 683, 685 [57 P.2d 1001], as follows: " 'As originally said in *McNeil* v. *Tenth Nat. Bank,* 46 N.Y. 325 [7 Am.Rep. 341], and approvingly quoted in *Woodsum* v. *Cole,* 69 Cal. 142 [10 P. 331], and *Dover* v. *Pittsburg Oil Co.,* 143 Cal. 501 [77 P. 405] : ''Where the true owner holds out another, or allows him to appear as the owner of or as having full power of disposition over the property, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. Their rights in such cases do not depend upon the actual title or authority of the party with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or power, which through negligence, or mistaken confidence, he caused or allowed to appear to be vested in the party making the conveyance.'' The same general doctrine was applied in *Schultz* v. *McLean,* 93 Cal. 329, 356 [28 P. 1053], where the fraud occasioning injury was practiced by the plaintiffs' own agent in the matter of the delivery of a deed, the vendee being one in good faith and for value. This court there said: " 'Where one of two innocent persons must suffer by the fraud or

negligence of a third, whichever of the two has accredited him ought to bear the loss.' This principle is recognized by section 3543 of the Civil Code, which reads: 'Where one of two innocent persons must suffer by the act of a third, he by whose negligence it happened, must be the sufferer,' . . . In this case, plaintiffs and defendant were both innocent. Neither knew that the fraud was being practiced; but if that fraud was productive of injury, the injury must result to the plaintiffs, for they placed it in the power of the wrong-doer to perpetrate the fraud.'' ' ''

Under the circumstances here if Harrison had demanded and received payment of the draft in cash rather than by check payable to his order and thereafter had converted the same to his own use, we do not apprehend that it could be reasonably contended that respondent could be held liable therefor to appellant. And we see no reason why a different result follows because payment was made by check drawn to the order of Harrison.

Finally appellant complains that the trial court erred in admitting, over his objection, evidence of the conversation had between respondent and Harrison upon the occasion of the presentation and payment of the draft. It is urged that such evidence was inadmissible under the elementary rule that the fact of agency may not be established by means of the extrajudicial statements of the alleged agent, and that in the absence of proof of agency the testimony was hearsay. The testimony, however, had no tendency to establish agency, for, far from asserting that he was acting as agent of the appellant, Harrison avowed his ownership of the instrument and demanded payment thereof in his own right. The evidence was competent and relevant, not for the purpose of establishing agency or the truth of the statements then made by Harrison, but as disclosing the nature of the transaction between Harrison and respondent upon the occasion in question. The principal issue in the case was whether or not payment of the draft by respondent to Harrison operated to discharge the instrument and relieve the respondent from any obligation thereon to the appellant, and this issue could be determined only by an inquiry into the circumstances attending such payment. There was therefore no error in the trial court's ruling.

The judgment is affirmed.

White, P. J., and Drapeau, J., concurred.