Filed 8/25/23  Speedboat JV Partners v. Capital One CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| SPEEDBOAT JV PARTNERS, LLC, | C093871 |
| Plaintiff and Appellant, | (Super. Ct. No. SCV0041499) |
| v. | |
| CAPITAL ONE, N.A., | |
| Defendant and Respondent. | |

This case arises out of foreclosure proceedings on a multimillion dollar residential property on the north shore of Lake Tahoe.  Plaintiff Speedboat JV Partners, LLC (Speedboat) appeals from the judgment entered after the trial court granted summary judgment in favor of defendant Capital One, N.A. (Capital One) on Speedboat's claims for negligence and a violation of Civil Code section 2943.  These claims were predicated on Capital One's handling of Speedboat's request to assume the home loan on the property obtained by a third party, and Capital One's failure to provide Speedboat a payoff demand statement identifying the unpaid balance of the loan.  Speedboat argues

1

reversal is required for various reasons, including evidentiary errors, the existence of triable issues of material fact, and the trial court's failure to grant a continuance of the summary judgment hearing. We disagree with Speedboat's claims of error and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

We forego a detailed recitation of the lengthy and somewhat complicated factual and procedural history of this case. Instead, we summarize the relevant background information. Additional information related to the specific contentions raised on appeal will be set forth as necessary in the Discussion section, *post*.

*Factual Background*

The following facts are taken from the evidence presented in the papers filed in connection with the summary judgment motion, except that to which objections were properly made and sustained. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.)[1] We summarize the evidence in the light most favorable to the party opposing summary judgment, in this case Speedboat, resolving any doubts concerning the evidence in its favor. (*Ibid.*)

The subject property is located on the north shore of Lake Tahoe at 77 Speedboat Avenue, Kings Beach, California. The property, which includes a large 35 room home, was part of a "family compound" owned by Paula Turtletaub's family for several decades prior to the events giving rise to this case.

---

[1] The trial court sustained numerous objections to the evidence Speedboat relied on in opposing summary judgment. To the extent Speedboat has not challenged those rulings on appeal, we do not consider that evidence. (See *Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 139-140 ["Where a plaintiff does not challenge the superior court's ruling sustaining a moving defendant's objections to evidence offered in opposition to the summary judgment motion, 'any issues concerning the correctness of the trial court's evidentiary rulings have been waived' "], disapproved on another ground in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 524, 526.)

2

In April 2007, Turtletaub refinanced the mortgage on the property and obtained a multimillion dollar loan ($4,620,000) for the purpose of completing the development of the property; the loan was secured by a deed of trust on the property. At some point prior to July 2012, Turtletaub defaulted on her loan.

In June 2013, Capital One acquired the beneficial interest in the loan (hereafter Capital One loan or loan). A notice of default was recorded in January 2014, which indicated that Turtletaub was more than $365,000 in arrears.

In late spring and early summer 2014, Turtletaub met with an investor, Marc Shishido, to discuss how to avoid foreclosure of the property. Turtletaub and Shishido eventually agreed to form a limited liability company called Speedboat, the primary purpose of which was to cure the default on the Capital One loan so Speedboat could either improve the property for resale or purchase it.[2]

At the time of formation in July 2014, there were three "contributing members" of Speedboat: Turtletaub, Frederick Hesley, and SFGG Holdings, Inc. (SFGG), which was a company owned by Shishido. Turtletaub obtained a 40 percent ownership stake in Speedboat in exchange for transferring her legal and equitable interest in the property to the company. Hesley obtained a 40 percent ownership stake in Speedboat in exchange for contributing a two-million-dollar credit line to the company, and SFGG obtained the remaining 20 percent ownership stake in Speedboat in exchange for contributing "project manager and developer services" to the company.

---

[2] Speedboat's management operating agreement stated: "The specific business purposes and activities contemplated by the founders of this LLC at the time of initial signing of this agreement consist of the following: "Stabilize financially Capital One (past due payments and fees and anticipated monthly payments for next 24 months), and physically improve and renovate [the subject property] and any other activity legal in the state of California."

In August 2014, after Turtletaub submitted various documents to Capital One in support of a loss mitigation review, Turtletaub was approved for loan reinstatement. The terms for reinstatement were set forth in a written repayment agreement and were based on the amount necessary to bring the loan current, i.e., cure the default. The repayment agreement provided that Capital One would not foreclose on the property if Turtletaub "fully complied" with the terms of the agreement, including making an initial payment of $167,450.48 and 12 monthly payments of $58,950.11. Speedboat was not a party to the repayment agreement. However, according to Shishido, he had many conversations with Capital One employees about the terms of the repayment agreement, and Capital One knew that Turtletaub was relying on Speedboat to make the required payments, and that Speedboat's "goal" was to assume the Capital One loan following the successful completion of the agreement.

During the 12-month term of the repayment agreement, several monthly payments were missed, although the Capital One loan was "brought current" the day before the 12-month term of the agreement expired on October 1, 2015. According to Shishido, at the completion of the repayment agreement, Speedboat and Turtletaub were told by a Capital One representative (Stacy Burns) that Capital One "required one more year of payment performance in order to approve [a] loan assumption in favor of [Speedboat]." However, aside from the declaration Shishido submitted in support of Speedboat's opposition to the summary judgment motion, the record contains no writing or other evidence establishing the existence of a "one-year extension" of the repayment agreement.[3]

---

[3] As noted *ante* in footnote 2, the express terms of Speedboat's management operating agreement provided that Speedboat's "specific business purposes and activities" included financially stabilizing the Capital One loan by bringing it current and making monthly payments on the loan for the "*next 24 months*." Thus, the record shows that the members of Speedboat, at the time of formation in July 2014, contemplated that Speedboat would make monthly mortgage payments on the Capital One loan until July 2016.

In October 2015, the notice of default was rescinded.

Approximately eight months later, in June 2016, Turtletaub's son, Alex,[4] was added as "an authorized user" on the Capital One loan account after he provided Capital One a power of attorney for Turtletaub, who had apparently become disabled.

In September 2016, Turtletaub and Hesley agreed to sell their interests in Speedboat to Shishido pursuant to the terms of a written purchase agreement. As part of that agreement, Shishido agreed to continue making monthly mortgage payments on the Capital One loan, and to seek Capital One's approval to assume the loan and allow Turtletaub to convey the property to Speedboat. As an alternative to the loan assumption, Shishido agreed to arrange for "wraparound financing" so "Speedboat could "accept full responsibility" for the Capital One loan. The assumption of the loan by Speedboat or the arrangement of "wraparound financing" was a condition precedent to the obligation of Turtletaub to sell her interest in Speedboat to Shishido.

In October 2016, Shishido received authorization from Capital One to access information regarding the Capital One loan, including the mortgage history.[5] Several days later, Shishido sent a letter to Capital One asking to change the account name on the loan from Turtletaub to Speedboat. In this letter, Shishido claimed that Speedboat was a party to the successfully completed repayment agreement, and that Speedboat had made the mortgage payments for the past 24 months. Shishido explained that he was requesting the name change to "simplify [Speedboat's] tax filings and manage future payments." After Capital One advised Shishido that it would not change the name on the

---

[4] Because Alex and his mother share the same last name, we refer to Alex by his first name to avoid confusion.

[5] This authorization occurred after Alex, in his capacity as attorney-in-fact for Turtletaub, provided Capital One written authorization for Shishido to "receive any and all loan information" regarding the Capital One loan.

5

account without a refinance of the loan, Shishido told Capital One that Speedboat wanted to assume the loan. In response, Capital One advised Shishido that he needed to submit a written loan assumption request.

In November 2016, Capital One received a letter from Shishido requesting that a loan assumption package be sent to Speedboat. Shortly thereafter, Capital One informed Shishido that a loan assumption package would not be provided absent written authorization from Turtletaub that Speedboat could assume the Capital One loan.

In early December 2016, the Capital One loan became delinquent due to a missed mortgage payment. Around a week later and the day after Turtletaub submitted a letter authorizing Speedboat to "fully assume" the Capital One loan, Capital One advised Turtletaub in writing that it was "unable to move forward" with her request to allow Speedboat to assume the loan. Capital One explained that the loan was "delinquent and must be brought current" before it would be "considered for an assumption."[6] Thereafter, neither Speedboat nor Shishido submitted a loan assumption application, and no additional mortgage payments were made on the loan.

In early January 2017, Capital One notified Turtletaub that her loan was in default and provided her a borrower assistance package. Several weeks later, Capital One received an application for foreclosure prevention options, which was supported by a letter from the attorney representing Alex (Turtletaub's son and attorney-in-fact). After describing the terms of the purchase agreement entered into by the members of Speedboat, the letter explained why the Capital One loan was in default. It stated: "Had Capital One been responsive to the parties' repeated requests on the assumption, the

---

[6] Because Speedboat was not seeking to assume the Capital One loan due to a divorce from or death of the borrower (Turtletaub), Capital One's policies and procedures required Speedboat to apply for a credit qualifying loan assumption, which would have been reviewed by Capital One's loan origination department.

transactions under the Purchase Agreement might have closed by the end of 2016. By the end of December 2016, the parties exhausted their resources to continue making the . . . monthly mortgage payments to Capital One, hence the current payment defaults. From the borrower's perspective, it is the ineptitude or negligence of Capital One in the futile assumption process that has resulted in the borrower's inability to keep the loan current." The letter further stated: "The extended contractual deadline among the parties to close the transaction was January 13, 2017. While the parties may agree to further extend, or reinstate, their Purchase Agreement, Mr. Shishido's equity and debt financing sources may be backing out, in part due to the sense of a lack of cooperation from Capital One." Less than a week later, Capital One informed Hesley that the Capital One loan did not qualify for an assumption because it was in default.

In April 2017, after Capital One made multiple requests for additional information, Turtletaub's application for foreclosure prevention options was closed due to "incompleteness."

In early May 2017, Capital One received a letter from Shishido. In this letter, Shishido claimed that he *recently* learned Capital One had not been receiving the "regular monthly payments" on the Capital One loan. Shortly thereafter, Shishido called Capital One and explained that he wanted to pay off the loan but at a reduced amount. In response, Capital One told Shishido that it was unable to authorize a reduced payoff amount. Two days later, Capital One sent Shishido a letter confirming that the loan was in default and provided a "reinstatement quote," i.e., the amount necessary to bring the loan current. At that time, the reinstatement amount was approximately $230,000 and the payoff amount was approximately $4,000,000.

In late May 2017, Capital One received a written request from WFG National Title Company (WFG) for a payoff demand statement as to the Capital One loan. The "borrower signature authorization" portion of the request identified Speedboat as the borrower and did not clearly identify the person who authorized WFG to obtain the

payoff statement, although the document appeared to be signed by a person named Alex. After Capital One notified WFG that it did not have sufficient information to review its request for a payoff demand statement and identified the specific information such a request must contain (e.g., the borrower's name and the name of the party authorizing the statement), WFG submitted another written request for a payoff demand statement, which, again, indicated that Speedboat was the borrower and did not clearly identify the person who authorized the statement. The borrower signature authorization portion of this request was identical to the first request, even though Capital One had specifically advised WFG (in response to the first request) that the name of the person authorizing the payoff demand statement was "illegible." As a result, Capital One did not provide WFG a payoff demand statement.

In June 2017, Turtletaub sold the property to Speedboat without notifying Capital One, which violated the terms of the promissory note. This transaction had no impact on the Capital One loan, which remained in Turtletaub's name. Two weeks later, Capital One rejected Shishido's offer of $3,200,000 to pay off the Capital One loan. That same day, Capital One sent Shishido a payoff demand statement. Speedboat, however, never paid the outstanding amount due on the loan as of June 29, 2017--$4,005,010.35.

In September 2018, Capital One sold its beneficial interest in the Capital One loan to RockTop Partners, LLC. In January 2019, Wilmington Savings Fund Society FSB, dba Christiana Trust as Trustee for PNPMS Trust II (Wilmington) acquired the beneficial interest in the Capital One loan.

*Procedural Background*

In July 2018, Speedboat filed this action against Capital One and others. A third amended (the operative) complaint was filed in August 2019.[7] It alleged against Capital

---

[7] The appellate record originally did not include any of the pleadings filed by Speedboat. While this appeal was pending, we granted Capital One's request to augment the record

8

One: (1) breach of contract as third party beneficiary; (2) breach of the implied duty of good faith and fair dealing; (3) negligence; (4) promissory estoppel (5) unfair business practices in violation of Business and Professions Code section 17200 et seq.; (6) fraud/negligent misrepresentation; (7) violation of Civil Code section 2943; (8) violation of the Truth in Lending Act, 15 United States Code section 1601 et seq.; (9) violation of the Real Estate Settlement Procedures Act, 12 United States Code section 2601 et seq.; and (10) declaratory relief.

Speedboat's negligence and violation of Civil Code section 2943 claims were the only claims that remained at issue as to Capital One after the trial court sustained its demurrer to the operative complaint in January 2020. As previously indicated, these claims were predicated on Capital One's handling of Speedboat's request to assume Turtletaub's loan (i.e., the Capital One loan), and Capital One's failure to provide Speedboat a payoff demand statement identifying the unpaid balance of the loan.

In November 2020, Capital One moved for summary judgment on Speedboat's remaining claims. Speedboat opposed the motion.

In January 2021, after a hearing, the trial court granted Capital One's motion for summary judgment.[8] In doing so, the court summarily overruled the evidentiary

---

to include the operative complaint. Given the augmentation of the record, we need not and do not consider Capital One's contention that Speedboat forfeited its claims of error by failing to provide an adequate record, which is predicated on the omission of the operative complaint.

[8] The trial court also granted summary judgment in favor of another defendant, Wilmington. The court stated: "[Speedboat] concedes that the viability of its claims against Wilmington wholly depend on the viability of its claims against Capital One. In light of this concession, and based on the court's ruling on Capital One's motion for summary judgment, the motion for summary judgment by Wilmington is granted." While this appeal was pending, we granted Wilmington's motion to dismiss, which asserted that the remaining claims against it (injunctive and declaratory relief) were moot because Speedboat paid off the subject loan in full in March 2022. Thus, Wilmington is no longer a party to this appeal.

objections lodged by Speedboat, and summarily sustained in part and overruled in part the evidentiary objections lodged by Capital One. At the hearing on the motion, the court denied Speedboat's oral request for a continuance, "essentially" agreeing with Capital One that the request was untimely, not supported by an affidavit or declaration showing that facts necessary to justify opposition to the summary judgment motion may exist but could not be presented, and did not include a showing of diligence on the part of Speedboat "in seeking discovery."

This appeal followed. Speedboat challenges the trial court's summary judgment ruling, but does not challenge the court's ruling on Capital One's demurrer to the operative complaint. Thus, the only claims at issue are Speedboat's claims for negligence and violation of Civil Code section 2943.

## DISCUSSION

### I

### *Standard of Review*

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (See *Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 843 (*Aguilar*).)

On a motion for summary judgment, a defendant must show "that one or more elements of the cause action . . . cannot be established, or that there is a complete defense to the cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).)[9] A defendant need only provide evidence showing that the plaintiff cannot prove its case. (See *Aguilar, supra,* 25 Cal.4th at pp. 853-855.)

---

[9] Further undesignated statutory references are to the Code of Civil Procedure.

Once the defendant has met its burden, the burden shifts to the plaintiff to show that a triable issue of material facts exists as to the cause of action or a defense thereto. The plaintiff cannot rely upon the allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, must set forth the specific facts showing that a triable issue of material fact exists as to the cause of action or a defense thereto. (Code Civ. Proc., § 437c, subd. (p)(2).)

Summary judgment is appropriate "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "The materiality of a disputed fact is measured by the pleadings [citations], which 'set the boundaries of the issues to be resolved at summary judgment.' " (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar, supra*, 25 Cal.4th at p. 850.) "Thus, a party 'cannot avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact.' " (*Dollinger DeAnza Associates v. Chicago Title Ins. Co*. (2011) 199 Cal.App.4th 1132, 1144-1145.)

We independently review the trial court's decision to grant a defendant's motion for summary judgment. (*Yanowitz v. L'Oreal USA, Inc., supra,* 36 Cal.4th at p. 1037.) In doing so, "we apply the traditional three-step analysis used by the trial court, that is, we (1) identify the pleaded issues, (2) determine if the defense has negated an element of the plaintiff's case or established a complete defense, and if and only if so, (3) determine if the plaintiff has raised a triable issue of fact." (*Meddock v. County of Yolo* (2013) 220 Cal.App.4th 170, 175.) "We need not defer to the trial court and are not bound by the reasons in its summary judgment ruling; we review the ruling of the trial court, not its

11

rationale." (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 630.)

Our review is governed by a fundamental principle of appellate procedure, namely, that " '[a] judgment or order of the lower court is *presumed correct*,' " and thus, " 'error must be affirmatively shown.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 see also *Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) Under this principle, Speedboat bears the burden of establishing error on appeal, even though Capital One had the burden of proving its right to summary judgment before the trial court. (*Frank and Freedus v. Allstate Ins. Co.* (1996) 45 Cal.App.4th 461, 474.) For this reason, our review is limited to contentions adequately raised and supported in Speedboat's opening brief. (*Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125-126.) Reversal is only required if Speedboat demonstrates prejudicial error based on sufficient legal argument supported by citation to the record. (*Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 557.)

II

*Negligence Claim*

Speedboat argues summary judgment was improperly granted as to its negligence claim because there were triable issues of material fact as to the elements of duty and breach of duty. Specifically, Speedboat claims there was a triable issue as to (1) whether Capital One "created" a duty to Speedboat to "give the loan assumption" by orally promising that Speedboat could assume the Capital One loan if the terms of the repayment agreement were satisfied, and (2) whether Capital One breached that duty by "unreasonably withholding" the loan assumption requested by Speedboat.

A. *Additional Background*

The operative complaint alleged that Capital One "created a duty" to Speedboat to exercise reasonable care by representing to Speedboat that if Speedboat "fully complied" with the payment obligations under the repayment agreement and its subsequent one-year

extension, then Capital One would "not unreasonably withhold" its approval of Speedboat's assumption of the Capital One loan. The operative complaint further alleged that Speedboat "fully performed its side of the bargain" by making all required payments under the repayment agreement and the one-year extension, and that Capital One breached its duty to Speedboat to "act reasonably in performing its contractual obligations" by "failing to approve the loan assumption request by Turtletaub and [Speedboat], which breach was the proximate cause of damages suffered by [Speedboat]."

In moving for summary judgment, Capital One argued that Speedboat's negligence claim failed because Capital One did not have a duty to allow Speedboat to assume the Capital One loan. In support of this argument, Capital One asserted (among other things) that Speedboat's voluntary payments to Capital One pursuant to the terms of the repayment agreement did not create a duty of care owed to Speedboat (a non-party to the agreement) under the general rule that a financial institution owes no duty of care to a third party in its financial transactions, and because the application of the *Biakanja* factors weighed against a finding of a duty owed by Capital One to Speedboat.[10] Capital One added that, even if Speedboat could establish a duty of care, it could not show that a triable issue of material fact existed as to whether there was a breach of that duty because the undisputed facts demonstrated that (1) the Capital One loan did not qualify for an assumption because it was in default, (2) Speedboat did not have the funds to cure the default (as conceded in a document attached to the operative complaint), and (3) Speedboat never submitted a written request to assume the loan.

---

[10] In *Biakanja v. Irving* (1958) 49 Cal.2d 647, our Supreme Court identified factors courts need consider in determining whether a plaintiff not in contractual privity with a defendant may recover damages for the negligent performance of a contract. (See *id*. at pp. 648-650.)

13

In response, Speedboat argued that it was not required to establish the existence of a duty owed by Capital One because the trial court found, in ruling on Capital One's demurrer to the operative complaint, that Capital One owed a duty to Speedboat in handling the repayment agreement and "loan assumption effort." In making this argument, Speedboat "ignore[d] Capital One's attempt to reanalyze the *Biakanja* factors regarding a duty of care," even though Speedboat conceded that it was not a party to the repayment agreement. Speedboat additionally argued (among other things) that there were triable issues of material fact as to whether Capital One breached its duty of care, including Capital One's failure to understand that Shishido's request to change the name on the Capital One loan account from Turtletaub to Speedboat was actually a request to assume the loan. According to Speedboat, had Capital One properly recognized that Shishido was seeking a loan assumption, the loan assumption process would have been expedited and the formal loan assumption request would have been submitted by Turtletaub prior to the loan becoming delinquent in December 2016. Speedboat also argued that Capital One breached its duty of care by instructing Shishido to allow the loan "to go into default," and by failing to follow its "own assumption policy," which allowed a loan to be assumed "based on the assumptor's agreement to bring the loan current and document proof of funds available and adequate to do so."

In granting summary judgment in favor of Capital One, the trial court stated as follows:

"[Speedboat] argues that the court has already determined that Capital One owed a duty of care to [Speedboat] by virtue of its ruling on the demurrer to third amended complaint. That assertion is incorrect, as the court's prior ruling related only to whether the complaint alleged sufficient facts to support the cause of action, and not whether admissible evidence establishes a triable issue with respect to each element of the claim. See *Aerojet-General Corp. v. Commercial Union Ins. Co.* (2007) 155

14

Cal.App.4th 132, 139.[11]  As [Speedboat's] opposition expressly ignores the issue of duty, [Speedboat] fails to satisfy its burden on the motion.

"Even if a duty of care between Capital One and [Speedboat] could be established by virtue of the parties' prior communications and [Speedboat's] payments under the Repayment Agreement, [Speedboat] fails to submit evidence supporting the contention that Capital One unreasonably withheld approval of any assumption request.  The evidence shows that [Speedboat's] principal, Marc Shishido, first submitted a written request that a loan assumption package be sent to [Speedboat] on or about October 31, 2016.  [Citation.]  Capital One responded by letter dated November 3, 2016, indicating that the request was denied because Paula Turtletaub, the sole borrower under the subject loan, had not provided written authorization to provide the loan assumption package to [Speedboat].  Following this communication, the loan went into default based on the failure to make the mortgage payment owed on December 1, 2016.  [Citation.]

"Mr. Shishido asserts that he was instructed by Stacy Burns, a Capital One officer, to allow the loan to go into default in order to be considered for an assumption, and that based on this instruction, he consciously failed to make the December 2016 mortgage payment, and each and every mortgage payment owed thereafter.  [Citation.]  These statements contradict prior admissions by [Speedboat] in this action, and cannot be used to create a triable issue of fact.  *Archdale v. American Int'l Specialty Lines Ins. Co.* (2007) 154 Cal.App.4th 449, 473.  Specifically, [Speedboat's] third amended complaint attaches a communication dated January 27, 2017, sent by counsel for Ms. Turtletaub's son and attorney-in-fact under power of attorney, Alex Turtletaub, to Capital One.  This communication informed Capital One that 'the parties exhausted their resources to

---

[11]  In that case, the appellate court explained:  "A ruling on a demurrer is an attack on the pleadings, and is not binding on subsequent summary judgment motions. [Citation.] Even when the same legal issue is presented, 'a motion for summary judgment or adjudication is not a reconsideration of a motion overruling a demurrer.' " (*Aerojet-General Corp. v. Commercial Union Ins. Co.*, *supra*, 155 Cal.App.4th at p. 139, fn. 6.)

15

continue making the $40,000 monthly mortgage payments to Capital One, hence the current payment defaults.' [Citation.] Further, Mr. Shishido has acknowledged sending a letter to Capital One on or about April 24, 2017, in which he states that '[t]oday, it came to my attention' that regular monthly payments had not been made on the subject loan since the December 2016 payment. [Citation.]

"Following Ms. Turtletaub's provision of written authorization for [Speedboat] to assume the loan, a second assumption package request was made on December 7, 2016. [Citation.] Capital One responded on December 8, 2016, denying the request on the grounds that the loan 'was delinquent and must be brought current before it can be considered for an assumption.' [Citation.] [Speedboat] does not dispute that it was aware of the denial by no later than January 31, 2017. [Citation.] The loan was never brought current, and no subsequent requests for assumption were ever made. [Citation.]

"Based on the foregoing, [Speedboat] fails to establish a triable issue of fact regarding breach of any duty of care. [Speedboat] fails to establish that it was unreasonable for Capital One to request written authorization from the borrower to permit [Speedboat] to assume the loan, or to deny the request for a loan assumption package while the loan was in default. [Speedboat] acknowledges that the default was not cured, that no payments owed under the terms of the loan have been paid since December 2016, and that no further attempts to assume the loan were made following the December 7, 2016 request." (Footnote added.)

B. *Applicable Legal Principles*

To prevail on a negligence cause of action, a plaintiff must show: (1) the defendant owed plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breach was a proximate or legal cause of plaintiff's injuries. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 477.)

"We start by identifying the allegedly negligent conduct by [the defendant] because our analysis is limited to 'the specific action the plaintiff claims the particular

16

[defendant] had a duty to undertake in the particular case.' " (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 62.) "Recovery in a negligence action depends as a threshold matter on whether the defendant had ' "a duty to use due care toward an interest of [the plaintiff's] that enjoys legal protection against unintentional invasion." ' " (*Southern California Gas Leak Cases* (2019) 7 Cal.5th 391, 397 (*Gas Leak*).)

" 'Duty is not universal; not every defendant owes every plaintiff a duty of care. A duty exists only if " 'the plaintiff's interests are entitled to legal protection against the defendant's conduct.' " [Citation.] Whether a duty exists is a question of law to be resolved by the court.' [Citations.] 'A duty of care may arise through statute' or by operation of the common law." (*Sheen v. Wells Fargo Bank, N.A.* (2022) 12 Cal.5th 905, 921 (*Sheen*).) A duty of care may also arise where the plaintiff and defendant have a "special relationship." (*Gas Leak, supra,* 7 Cal.5th at p. 400 [explaining that a "special relationship" means that "the plaintiff was an intended beneficiary of a particular transaction but was harmed by the defendant's negligence in carrying it out"].)[12]

"[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." (*Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089, 1096.) Additionally, California law generally does not impose a duty of care to avoid causing purely economic losses--financial harm unaccompanied by physical or property damage--in negligence cases. (See *Sheen, supra,*

---

[12] For example, in *Biakanja v. Irving, supra,* 49 Cal.2d 647, our Supreme Court held that the intended beneficiary of a will could recover for assets she would have received if the notary had not been negligent in preparing the document. (*Id.* at pp. 650-651.) A special relationship existed between the intended beneficiary and the notary because "the 'end and aim' of the transaction" between the nonparty decedent and the notary was to ensure that the decedent's estate passed to the intended beneficiary. (*Id.* at p. 650.)

17

12 Cal.5th at p. 922 ["[i]n general, there is no recovery in tort for negligently inflicted 'purely economic losses' "]; see *Gas Leak, supra,* 7 Cal.5th at [explaining that "[t]he primary exception to the general rule of no-recovery for negligently inflicted purely economic losses is where the plaintiff and the defendant have a 'special relationship' "].) In contract cases, this rule--known as the economic loss rule--"functions to bar claims in negligence for pure economic losses in deference to a contract between the litigating parties." (*Sheen,* at p. 922.)

"Not all tort claims for monetary losses between contractual parties are barred by the economic loss rule. But such claims are barred when they arise from — or are not independent of — the parties' underlying contracts." (*Sheen, supra,* 12 Cal.5th at p. 923 [the economic loss rule does not bar fraud and intentional misrepresentation claims because they are independent of the defendant's breach of contract]; see *Erlich v. Menezes* (1999) 21 Cal.4th 543, 551-552 [explaining that tort damages have been permitted in contract cases where conduct amounting to a breach of contract also violates a duty independent of the contract arising from principles of tort law].) When the plaintiff and defendant are in contractual privity, the purpose of the economic loss rule is to prevent " 'the law of contract and the law of tort from dissolving one into the other.' " (*Robinson Helicopter Co. v. Dana Corp.* (2004) 34 Cal.4th 979, 988.)

When the plaintiff is a third person not in contractual privity with the defendant, the multifactor approach articulated by our Supreme Court in *Biakanja* for ascertaining a duty of care applies. (*Sheen, supra*, 12 Cal.5th at p. 937.) These factors "are used to determine whether persons must exercise reasonable care to avoid negligently causing economic loss to others with whom they were *not* in privity (sometimes referred to as third parties)." (*Sheen*, at pp. 937-938.) The *Biakanja* factors are " '[1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to [the plaintiff], [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5]

18

the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.' " (*Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1013-1014.)

C. *Analysis*

We see no basis for reversal. Speedboat's negligence claim arises from the mortgage contract Turtletaub had with Capital One and the repayment agreement Turtletaub subsequently entered into with Capital One after she defaulted on her loan. The claim is predicated on the theory that Capital One owed Speedboat a duty to exercise reasonable care in "performing its contractual obligations" under the terms of the repayment agreement.

The source of this duty is not grounded in any statute or regulation. Nor is it grounded in the specific language of the repayment agreement or any other written agreement. Instead, the duty is based on Capital One's oral representation that it would "not unreasonably withhold its approval" of Speedboat's assumption of the Capital One loan if Speedboat "fully complied" with the payment obligations set forth in the repayment agreement and the subsequent one-year extension of that agreement. According to Speedboat, Capital One breached its duty of care by failing to approve the loan assumption request after Speedboat "fully performed its side of [the] bargain by making all payments required under the repayment agreement and its subsequent one-year extension." As for damages, Speedboat alleged that it suffered financial harm as a result of Capital One's breach of duty, including costs associated with continuing to "carry the property" (e.g., property taxes, maintenance). Speedboat further alleged that, had Capital One "honored its commitment to reasonably allow assumption of the loan," Speedboat could have completed the improvements to the property and sold it "by the end of 2017." Instead, Speedboat was "forced" to "carry the property" for another two years, to its "detriment and damage." As we next explain, Speedboat has failed to demonstrate that summary judgment was improperly granted.

19

At the outset, we deem Speedboat's claim of error as to the issue of duty forfeited. Speedboat presents no legal argument in its opening brief, supported by citation to authority and material facts in the record, demonstrating that Capital One owed Speedboat a duty of care under California law; it filed no reply brief. It is fundamental that an appellant must provide legal authority and factual analysis on each point raised, and if an appellant fails to support a point with reasoned legal argument, the argument may be deemed forfeited. (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655.) Appellate courts may, and ordinarily do, disregard arguments that are "not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 287; *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153.)[13]

Forfeiture aside, we conclude that Speedboat has not carried its burden to show reversible error. Although Speedboat asserts on appeal (without citation to authority) that it was a party to the repayment agreement because Turtletaub was a member of Speedboat, the record reflects that Speedboat was not a party to the underlying mortgage contract or repayment agreement. And there is nothing in the language of the repayment

---

[13] Nor was Speedboat's claim of error as to the issue of duty properly raised in connection with the summary judgment proceedings. On appeal, Speedboat argues there was a triable issue of material fact as to whether Capital One owed Speedboat a duty of care based on Capital One's oral representation that it would allow Speedboat to assume the Capital One loan if the loan was "brought current" through performance of the repayment agreement and the subsequent one-year extension of that agreement. This argument was not raised in Speedboat's opposition to the summary judgment motion or at the hearing on the motion It is well established that a reviewing court will ordinarily not consider arguments made for the first time on appeal. (*Kashmiri v. Regents of University of California* (2007) 156 Cal.App.4th 809, 830.) A party who fails to raise an argument in the trial court has therefore forfeited its right to do so on appeal. (*Kern County Dept. of Child Support Services v. Camacho* (2012) 209 Cal.App.4th 1028, 1038.)

20

agreement providing for Speedboat's assumption of the Capital One loan following the successful completion of the agreement. To the extent Speedboat suggests that it was a party to an enforceable oral agreement/contract with Capital One related to the repayment agreement, Speedboat's negligence claim would fail in light of the economic loss rule.[14] The operative complaint makes clear that Speedboat seeks recovery in tort for negligently inflicted "purely economic losses" (i.e., financial harm unaccompanied by physical or property damage) arising from Capital One's failure to "honor" its oral promise to "reasonably allow assumption of the loan." In short, Speedboat has not demonstrated harm above and beyond an alleged broken oral agreement/contract or that Capital One owed it an independent duty beyond the terms of that purported oral agreement/contract. To the extent the multifactor approach articulated in *Biakanja* for ascertaining a duty of care applies, Speedboat made no effort to show the existence of a legal duty under those factors in its opposition to the summary judgment motion or in its opening brief on appeal.

Further, Speedboat's negligence claim fails for a separate, independent reason. The trial court properly determined that Speedboat did not establish a triable issue of material fact as to breach of duty. As described *ante*, the operative complaint alleged that Capital One breached its duty to "act reasonably in performing its contractual obligations" by "unreasonably withhold[ing]" approval of the loan assumption request after Speedboat "fully complied" with the payment obligations set forth in the repayment

---

[14] In addition to a negligence claim, the operative complaint alleged claims for promissory estoppel and negligent misrepresentation. In *Sheen*, our Supreme Court explained that these claims are separate and distinct claims from a negligence claim but did not decide whether such claims were barred by the economic loss rule in the context of a mortgage loan modification. (See *Sheen*, *supra*, 12 Cal.5th at pp. 943-944.) Because Speedboat did not appeal the trial court's ruling on Capital One's demurrer to the operative complaint, Speedboat's promissory estoppel and negligent misrepresentation claims are not before us.

21

agreement and subsequent one-year extension of that agreement. The record reflects that Speedboat missed several monthly payments during the term of the repayment agreement and never submitted a loan assumption application after the term of that agreement expired in October 2015. The record further reflects that, although Turtletaub authorized Speedboat to assume the Capital One loan in December 2016, Capital One denied Speedboat's subsequent request for a loan assumption package because the loan was in default and Capital One's policy required that the loan be brought current before it could be considered for an assumption. Thereafter, the default was never cured because Speedboat lacked the funds to do so. And Speedboat does not point to anything in the record permitting it to assume the loan while the loan was in default and without submitting a loan assumption package to Capital One demonstrating that it qualified for a loan assumption.

We reject Speedboat's contention that there was a triable issue of material fact as to breach of duty because Shishido's declaration stated that he failed to make the December 2016 mortgage payment because he was instructed by a Capital One officer (Stacy Burns) to allow the Capital One loan to go into default in order to be considered for an assumption. In granting summary judgment, the trial court found that this statement could not be used to create a triable issue of fact, as it was contradicted by prior admissions by Speedboat in two documents. One of those documents was a letter written by Alex's attorney (i.e., counsel for Turtletaub's son and attorney-in-fact) in late January 2017. That letter, which was attached to the operative complaint, explained that Turtletaub defaulted on the Capital One loan in December 2016 because the "parties" (e.g., the members of Speedboat) exhausted their resources and therefore could no longer make the monthly mortgage payments. The other document, a letter written by Shishido and received by Capital One in May 2017, stated that Shishido had *recently* learned that regular monthly payments had not been made on the Capital One loan since December 2016. We see no error in the trial court's decision to disregard the self-serving statement

22

in Shishido's declaration that contradicted a prior written statement he made. (See *Alvis v. County of Ventura* (2009) 178 Cal.App.4th 536, 549 ["We cannot accept as substantial evidence of a triable issue of fact a declaration that directly contradicts the declarant's prior statement, where the contradiction is unexplained. We may not ignore this significant contradiction."].)

III

*Civil Code Section 2943*

Next, Speedboat argues summary judgment was improperly granted because there was a triable issue of material fact as to whether Capital One violated Civil Code section 2943 by failing to provide WFG a payoff demand statement on behalf of Speedboat. Speedboat claims there was a "dispute of material fact" as to whether Capital One had sufficient information to process WFG's payoff demand statement request, specifically whether Capital One had reason to know that the identity of the person authorizing the request was Turtletaub's son and attorney-in-fact, Alex.

A. *Applicable Legal Principles*

A "payoff demand statement" is "a written statement, prepared in response to a written demand made by an entitled person or authorized agent, setting forth the amounts required as of the date of preparation by the beneficiary, to fully satisfy all obligations secured by the loan that is the subject of the payoff demand statement." (Civ. Code., § 2943, subd. (a)(5).) An "entitled person" is "the trustor or mortgagor of, or his or her successor in interest in, the mortgaged or trust property or any part thereof, any beneficiary under a deed of trust, any person having a subordinate lien or encumbrance of record thereon, the escrowholder licensed as an agent pursuant to Division 6 (commencing with Section 17000) of the Financial Code, or the party exempt by virtue of Section 17006 of the Financial Code who is acting as the escrowholder." (*Id*., subd. (a)(4).) A "beneficiary" is "a mortgagee or beneficiary of a mortgage or deed of trust, or his or her assignees." (*Id*., subd. (a)(1).)

23

Subdivision (c) of section 2943 provides: "A beneficiary, or his or her authorized agent, shall, on the written demand of an entitled person, or his or her authorized agent, prepare and deliver a payoff demand statement to the person demanding it within 21 days of the receipt of the demand." However, "[t]he beneficiary may, before delivering a statement, require reasonable proof that the person making the demand is, in fact, an entitled person or an authorized agent of an entitled person, in which event the beneficiary shall not be subject to the penalties of this section until 21 days after receipt of the proof herein provided for. A statement in writing signed by the entitled person appointing an authorized agent when delivered personally to the beneficiary or delivered by registered return receipt mail shall constitute reasonable proof as to the identity of an agent." (Civ. Code, § 2943, subd. (e)(3).)

"If a beneficiary for a period of 21 days after receipt of the written demand willfully fails to prepare and deliver the statement, he or she is liable to the entitled person for all damages which he or she may sustain by reason of the refusal and, whether or not actual damages are sustained, he or she shall forfeit to the entitled person the sum of three hundred dollars ($300)." (Civ. Code, § 2943, subd. (e)(4).) "Willfully" means "an intentional failure to comply with the requirements of this section without just cause or excuse." (*Ibid.*)

B. *Additional Background*

The operative complaint alleged that Capital One violated Civil Code section 2943 by failing to provide "an escrow officer at WFG on behalf of [Speedboat]" a payoff demand statement, which "forc[ed]" Speedboat to purchase the property "subject to a first position loan in default, all to [Speedboat's] financial detriment." The operative complaint further alleged that, as a result of this wrongful conduct by Capital One, Speedboat "suffered general, special, consequential, and incidental damages."

In moving for summary judgment, Capital One argued (among other things) that it did not violate Civil Code section 2943 because WFG's written requests for a payoff

24

demand statement were invalid, since both requests inaccurately identified Speedboat as the borrower of the Capital One loan and failed to demonstrate that WFG was an "entitled person" or an authorized agent of an "entitled person" permitted to receive a payoff demand statement. Capital One noted that while WFG's requests for a payoff demand statement included a signature, the requests did not identify the person who authorized the payoff demand statement; that is, the person whose signature appeared in the "borrower signature authorization" portion of those requests.

In response, Speedboat claimed that WFG submitted valid payoff demand statement requests to Capital One because Speedboat, "as the successor in interest to the secured property, and WFG, as a recognized provider of escrow services, constituted an 'entitled person' " within the meaning of Civil Code section 2943. Speedboat further argued that contrary to Capital One's contention, WFG's payoff demand statement requests did identify Turtletaub as the borrower.

In granting summary judgment, the trial court found that Speedboat failed to establish a triable issue of material fact. In so finding, the court stated: "[Speedboat] does not demonstrate that it was unreasonable for Capital One to request the identity of the individual signing the borrower authorization, particularly where the authorization itself identified the borrower as [Speedboat]. As this information was never provided, Capital One's duty to respond to WFG pursuant to Civil Code section 2943(c) was never triggered."

C. *Analysis*

We see no error. The record reflects that Capital One was under no statutory obligation to provide a payoff demand statement to WFG. WFG's written requests for such a statement on behalf of Speedboat did not show that WFG was an "entitled person" or an authorized agent of an "entitled person" within the meaning of Civil Code section 2943. While one of the pages of the first request identified Turtletaub as the borrower of the Capital One loan, the "borrower signature authorization" portion of both requests

25

erroneously identified Speedboat as the borrower and did not clearly identify the person who authorized WFG to receive a payoff statement for that loan. Although not entirely clear, each request appeared to contain a signature indicating that a person named "Alex" authorized the request. However, the last name of this person cannot be discerned from the signature provided. By its express terms, the statute permitted Capital One to require reasonable proof that the person requesting the payoff demand statement was, in fact, an entitled person or an authorized agent of an entitled person, before delivering the statement. (Civ. Code, § 2943, subd. (e)(3).) This is what happened here.[15]

Speedboat insists there was a triable issue of material fact precluding summary judgment because Alex's signature and identity as the attorney-in-fact for his mother (Turtletaub) were known to Capital One, and therefore Capital One should have recognized that Alex was the person who authorized WFG's payoff demand statement requests. Because this argument is raised for the first time on appeal and not supported by any legal authority, we decline to consider it. (See *Bhatt v. State Dept. of Health Services* (2015) 133 Cal.App.4th 923, 933 [" 'a party who fails to raise an issue in the trial court has therefore waived the right to do so on appeal' "]; *Keyes v. Bowen*, *supra*, 189 Cal.App.4th at p. 655 [a party who fails to support an argument with citation to authority has forfeited the argument].)

We reject Speedboat's undeveloped contention that reversal is required because WFG was an "entitled person" within the meaning of Civil Code section 2943 because it is a "nationally recognized escrowholder." Speedboat forfeited this claim by failing to

---

[15] Although the trial court did not address Capital One's argument that summary was proper because Speedboat could not establish damages, summary judgment was also warranted on this ground. Under the plain language of the statute, only an "entitled person" may recover damages sustained due to the refusal of a beneficiary to provide a payoff demand statement. (Civ. Code, § 2943, subd. (a)(3), (4).) Here, the record reflects that Speedboat was not an "entitled person" within the meaning of the statute. (See *id*., subd. (a)(4) [defining the term "entitled person"].)

26

cite any legal authority or make any reasoned legal argument supporting its interpretation of the statute. (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [when an appellant asserts a point but fails to support it with reasoned argument and citations to authority, we treat the point as waived].)

IV

*Request for a Continuance*

Next, Speedboat argues the trial court erred in denying its oral request for a continuance of the summary judgment hearing. Speedboat claims the trial court's order compelling Capital One to provide further responses to discovery requests (special interrogatories) after the summary judgment motion was filed amounted to a finding that essential evidence necessary to oppose the motion may have existed but could not be presented.

A. *Applicable Legal Principles*

Subdivision (h) of section 437c provides, in relevant part, as follows: "If it appears from the affidavits submitted in opposition to a motion for summary judgment . . . that facts essential to justify opposition may exist but cannot, for reasons stated, be presented, the court shall deny the motion, order a continuance to permit affidavits to be obtained or discovery to be had, or make any other order as may be just. The application to continue the motion to obtain necessary discovery may also be made by ex parte motion at any time on or before the date the opposition response to the motion is due."

The purpose of the affidavit requirement is " 'to inform the court of outstanding discovery which is necessary to resist the summary judgment motion.' " (*Bahl v. Bank of America* (2001) 89 Cal.App.4th 389, 397.) The summary judgment statute " 'requires more than a simple recital that "facts essential to justify opposition may exist." The affidavit or declaration in support of the continuance request must detail the specific facts that would show the existence of controverting evidence.' " (*Granadino v. Wells Fargo Bank, N.A.* (2015) 236 Cal.App.4th 411, 420.)

27

A party seeking a continuance to oppose summary judgment " 'must show: (1) the facts to be obtained [through additional discovery] are essential to opposing the motion; (2) there is reason to believe such facts may exist; and (3) the reasons why additional time is needed to obtain these facts.' " (*Frazee v. Seely* (2002) 95 Cal.App.4th 627, 633.) "[L]ack of diligence may be a ground for denying a request for a continuance of a summary judgment . . . hearing." (*Cooksey v. Alexakis* (2004) 123 Cal.App.4th 246, 257.) "A good faith showing that further discovery is needed to oppose summary judgment requires some justification for why such discovery could not have been completed sooner." (*Ibid.*)

The decision whether to grant a continuance of the summary judgment hearing is within the discretion of the trial court. (*Frazee v. Seely, supra*, 95 Cal.App.4th at p. 633.) " ' "An abuse of discretion occurs if, in light of the applicable law and considering all of the relevant circumstances, the court's decision exceeds the bounds of reason and results in a miscarriage of justice." ' " (*Espejo v. The Copley Press, Inc.* (2017) 13 Cal.App.5th 329, 378.)

B. *Analysis*

We find no abuse of discretion. In opposing the summary judgment motion, Speedboat did not request a continuance in its papers or submit an affidavit or declaration in support of a request for a continuance. Instead, at the hearing on the motion, Speedboat indicated that the trial court had recently granted a motion to compel further discovery responses and argued that it would be "appropriate" to grant a continuance so the trial court could consider the evidence Capital One was ordered to produce. Speedboat, however, did not explain why it believed the facts it sought through this discovery existed, why these facts were essential to oppose the summary judgment motion, or why these facts could not have been obtained sooner--i.e., in the two-and-a-half years since the action was commenced. Accordingly, the trial court did not err in denying Speedboat's request for a continuance.

28

We reject Speedboat's unsupported contention that reversal is required because the trial court's order "compelling discovery" was the "equivalent" of a finding that essential evidence may have existed but could not be presented "for the obvious reason that Capitol [*sic*] One withheld the evidence from the [Speedboat] and trial court."  (See *Scott v. CIBA Vision Corp*. (1995) 38 Cal.App.4th 307, 325-326 [rejecting similar argument on the ground that the party opposing summary judgment must show by affidavit that the outstanding discovery would have led to facts necessary to resist the motion].)

V

*Evidentiary Issues*

Next, Speedboat argues the trial court erred in overruling objections to Casey Zachary's declaration and sustaining objections to Shishido's declaration.

A.  *Zachary's Declaration*

1.  *Additional Background*

In support of its motion for summary judgment, Capital One relied on Zachary's declaration and the various documents attached to it.  Zachary's declaration stated that she was a former employee of Capital One Services, LLC (Capital One Services), which was a company that provided administrative services to Capital One in connection with Capital One's banking products, and that she was authorized to make the declaration on behalf of Capital One.  Zachary explained that she was employed by Capital One Services from August 2011 to July 2020 as a Senior Manager in the Home Loans Servicing Department, and that her responsibilities included reviewing mortgage account documents and system notes related to Capital One mortgage account information in order to resolve Capital One customer disputes.  Zachary further explained that she had personal knowledge of the manner and method in which Capital One prepared and maintained normal business records (both physical and electronic) for loans secured by real property, that she reviewed Capital One's records relating to the loan obtained by

29

Turtletaub regarding the subject property, and that exact copies of those records were attached to her declaration.

Speedboat objected to the entirety of Zachary's declaration on the grounds of "hearsay and/or lack of authority." Citing Civil Code section 2307[16] and *Shammas v. Boyett* (1952) 114 Cal.App.2d 139, Speedboat argued that "agency may not be established by means of the extrajudicial statements of the alleged agent, and that in the absence of proof of agency the testimony was hearsay." In other words, Speedboat claimed that Zachary was not a qualified witness to lay the foundation for the documents attached to her declaration.

Speedboat also objected to the following statement in Zachary's declaration: "The records and documents referred to in this declaration constitute writings taken or made in the regular or ordinary course of business at Capital One at or near the time of the act, condition or event to which they relate by mechanical processors or persons employed by Capital One who had a business duty to Capital One to accurately and completely take, make and maintain such records." As grounds for objection, Speedboat asserted that Zachary's statement should be excluded as hearsay and/or because she lacked personal knowledge and/or authority to make the statement. According to Speedboat, Zachary's declaration did not explain the basis of her personal knowledge as to who prepared the documents, and Zachary lacked the authority for the admission and authentication of the documents. Thus, Speedboat claimed that the documents were not properly authenticated and/or were hearsay that did not fall within an exception to the hearsay rule (e.g., business record exception).

The trial court summarily overruled Speedboat's objections.

---

[16] Civil Code section 2307 provides: "An agency may be created, and an authority may be conferred, by a precedent authorization or a subsequent ratification."

2. *Analysis*

Evidence Code section 1271 is the business record exception to the hearsay rule. It provides that "[e]vidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the act, condition, or event if:  [¶]  (a) The writing was made in the regular course of a business;  [¶]  (b) The writing was made at or near the time of the act, condition, or event;  [¶]  (c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and  [¶]  (d) The sources of information and method and time of preparation were such as to indicate its trustworthiness."  (Evid. Code, § 1271.)

"A trial court has wide discretion in determining whether a qualified witness possesses sufficient personal knowledge of the identity and mode of preparation of documents for purposes of the business records exception.  [Citation.]  Indeed, 'any "qualified witness" who is knowledgeable about the documents may lay the foundation for introduction of business records—the witness need not be the custodian or the person who created the record.'  [Citation.]  Thus, a qualified witness need not be the custodian, the person who created the record, or one with personal knowledge in order for a business record to be admissible under the hearsay exception."  (*Estate of O'Connor* (2017) 16 Cal.App.5th 159, 170; see *Jazayeri v. Mao* (2009) 174 Cal.App.4th 301, 322 [a qualified witness need not have been present at every transaction to establish the business records exception; he or she need only be familiar with the procedures followed].)  On appeal, we will reverse a trial court's determination that a sufficient foundation has been laid to qualify evidence as a business record only if the trial court clearly abused its discretion.  (*People v. Hovarter* (2008) 44 Cal.4th 983, 1011.)

We conclude that Speedboat has not carried its burden to show error.  Speedboat has not cited any authority demonstrating that the documents attached to Zachary's declaration were inadmissible, including authority establishing that Zachary was not qualified to lay the foundation for their admission as business records.  Nor has

31

Speedboat cited any authority showing that there was insufficient evidence to support a finding that the documents were authentic.[17] We have reviewed the authority relied on by Speedboat in its opening brief, including *Taggart v. Super Seer Corp.* (1995) 33 Cal.App.4th 1697 and *Shammas v. Boyett, supra*, 114 Cal.App.2d 139, and conclude that it does not support a finding of evidentiary error.

B. *Shishido's Declaration*

1. *Additional Background*

Capital One lodged numerous objections to the declaration Shishido submitted in support of Speedboat's opposition to the summary judgment motion. As relevant here, Capital One objected to paragraphs nine and 10 of the declaration on various grounds, e.g., hearsay, lack of foundation, lack of personal knowledge, relevance, improper legal conclusion. The challenged paragraphs of Shishido's declaration stated as follows:

"9. In or around 2014, as a result of negotiations between Capital One's loan officers, Turtletaub, her agent Mary Gilanfarr Van Dyke and me (and sometimes the other LLC member Frederick Hesley), Capital One and Turtletaub entered into a Repayment Agreement, attached hereto as Exhibit 1. The Repayment Agreement was entered by Capital One with the express knowledge by Capital One that Turtletaub would not be able to perform the Agreement, that she was relying on and intending for the LLC to perform the Agreement, and that the Agreement was to benefit [Speedboat] and

---

[17] Evidence Code section 1401 requires that a writing be authenticated before it may be received in evidence or before secondary evidence of its contents may be received in evidence. Nothing in the Evidence Code purports to "limit the means by which a writing may be authenticated or proved." (Evid. Code, § 1410.) Typically, however, the proponent of a writing must produce evidence that demonstrates its authenticity, i.e., that "the document is what it purports to be." (See *Jazayeri v. Mao, supra*, 174 Cal.App.4th at p. 321.)√ "As long as the evidence would support a finding of authenticity, the writing is admissible. The fact conflicting inferences can be drawn regarding authenticity goes to the document's weight as evidence, not its admissibility." (*Ibid.*)

32

Turtletaub equally. I know this because I had many conversations with Capital One loan officers and other agents about the loan default, the repayment agreement terms, the goal of the LLC to assume the loan, and its reliance on Capital One's employees' representations that if the loan were brought current through performance of the Repayment Agreement, Capital One would abide by the loan terms regarding loan assumption and allow the LLC to assume the loan.

"10. The Capital One loan did not name the LLC in the Repayment Agreement because [Speedboat] was not formally a borrower on the loan. However, individual representatives from [Capital One] confirmed to Turtletaub, Van Dyke, Hesley and me that if [Speedboat] or Turtletaub faithfully performed the requirements of the Repayment Agreement, [Capital One] would exercise its contractual duty to not unreasonably withhold permission for [Speedboat] to assume the Capital One loan and become the borrower of record. This is a more formal expression than what I understood at the time of the Repayment Agreement negotiations, which was that if we — Turtletaub and the LLC — paid the amount due to reinstate the loan, Capital One would allow the LLC to assume the loan."

The trial court summarily sustained Capital One's objections to these paragraphs, with one exception--the last sentence of paragraph 10.

2. *Analysis*

We need not decide whether the trial court committed evidentiary error because Speedboat failed to show prejudice from any purported error by " 'spelling out in [its] brief exactly how the error caused a miscarriage of justice.' " (*County of Los Angeles v. Nobel Ins. Co*. (2000) 84 Cal.App.4th 939, 945; see *Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694 [reversal not required because plaintiff failed to show she was "prejudiced by the trial court's adoption of evidentiary rulings proposed by defendant's attorneys"].) In order to demonstrate prejudice from the asserted error, Speedboat bears the burden to describe the excluded evidence, including how it related to the issues in

dispute, and then explain why its inclusion would have created a "reasonable probability" that a result more favorable to it would have been reached in the absence of the error. (*Twenty-Nine Palms Enterprises Corp. v. Bardos* (2012) 210 Cal.App.4th 1435, 1449.) Speedboat failed to undertake this analysis in its opening brief. And, in any event, we discern no prejudice. Even if we were to consider the excluded evidence, we are convinced that summary judgment was properly granted, for the reasons we have stated.

VI

*Remaining Issues*

We find no merit in the remaining contentions raised by Speedboat, including that reversal is required because the trial court improperly applied the summary judgment standard by failing to find that Capital One met its initial burden of production, and by failing to view the evidence in the light most favorable to Speedboat.[18]

---

[18] Given the conclusions we have reached, we need not and do not address any of the other arguments raised by the parties.

34

## DISPOSITION

The judgment is affirmed.  Capital One shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)

/s/

Duarte, J.

We concur:

/s/

Earl, P. J.

/s/

Horst, J.*

---

*  Judge of the Placer County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.